**Daniel ROSS et al., Plaintiffs,**

v.

**Vernon L. BOUNDS, Individually, and in his capacity as Commissioner, jointly and severally and all the agents, employees and successors in the interest of all the foregoing, et al., Defendants.**

**Civ. No. 4366.**

United States District Court,
E. D. North Carolina,
Raleigh Division.

March 26, 1974.

Daniel Ross, pro se.

Robert Morgan, Atty. Gen. of N. C., by Jacob L. Safron, Asst. Atty. Gen., Raleigh, N. C., for defendants.

## MEMORANDUM OPINION and ORDER

LARKINS, District Judge:

This is a civil action brought pursuant to Title 42 U.S.C. § 1983 in which plaintiffs, black inmates confined by the North Carolina Department of Correction, claim that they have a constitutional right to be routinely examined for the disease of sickle cell anemia. Plaintiffs desire injunctive relief requiring that all prisoners of the black race have a physical examination to determine whether or not they have sickle cell anemia or carry the trait.

The State has answered and moved to dismiss the complaint. They admit that no routine check of inmates is made for sickle cell anemia but state that if an inmate exhibits symptoms of the disease he will be treated. The defendants argue that the federal courts should not

interfere with the ordinary medical practices or internal affairs of state prisoners unless the conduct "shocks the conscience of the court", that they are not negligent in their duties, but even if so that would give plaintiffs no cause of action under the Civil Rights Act, and that if testing for sickle cell anemia were raised to constitutional dimensions, then every other disease (cancer, T.B., heart trouble) would achieve the same status, and the prison hospital would be unable to function efficiently having to conduct such comprehensive physical examinations.

The record includes (1) two affidavits of Dr. A. C. Broughton, M.D., Chief of the Medical Services for the Department of Correction, Central Prison Hospital; (2) a copy of the article entitled "Sickle Cell Anemia", method of Paul R. McCurdy, M.D. published in *Current Therapy 1972*; (3) a copy of *Differential Diagnosis* by A. McGehee Harvey, M.D. and James Bordley, III, M.D.; and (4) a well-written memorandum and other material by the plaintiffs. This Court also has read in its research the article entitled "The Sickle Cell Anemia Story: What a Difference a Valine Makes" published in *Ward's Bulletin*, Volume 13, No. 92 (October 1973), a copy of which has been placed in the case file.

Considerable publicity has recently been given in the national news media to sickle cell anemia. Probably one of the most significant factors in this recognition of the disease is the interest generated by well-known black athletes and entertainers to make the public aware of the methods needed to eliminate the disease. It appears that approximately 2% of black Americans have the lethal disease sickle cell anemia while about 9% carry the sickle cell trait. Research has found what sickle cell anemia is, what causes it, and how it works, but no specific therapy for the sickle cell disorder is known and control of the disease, which is hereditary, is extremely complex.

In simplified medical terms, the disease can be described as follows: Each human blood cell contains about 280 million hemoglobin molecules. Each hemoglobin molecule contains four polypeptide chains and four molecules of heme. In each of the two Beta polypeptide chains there is a single amino acid difference. Normal hemoglobin has a glutamic acid component while sickle cell hemoglobin substitutes a valine component. The difference expresses itself under conditions of oxygen deficiency when sickle cell hemoglobin becomes less soluble than normal hemoglobin. In fact, the deoxygenated sickle cell hemoglobin loses about 98% of its solubility. It tends to form long, thick rods (sickle shaped) and in this distorted condition it blocks smaller blood vessels and produces localized areas of oxygen deprivation. Many red cells are destroyed, leading to the characteristic anemia, and when vascular blockage is extensive the victim suffers painful "crises" which ultimately can become fatal.

The homozygous condition produces the lethal disease sickle cell anemia and in such a condition the victim has only sickle cell hemoglobin. The heterozygous condition produces the carrier trait in which the carrier has about 40% sickle cell hemoglobin and 60% normal hemoglobin. Those with the trait are resistant to tertian malaria and do not normally suffer ill effects except under unusual conditions of oxygen deficiency, e. g. when flying at high altitudes.

The hereditary aspect of the disease is as follows: Each mating of two persons with the sickle cell trait has a 25% chance of producing a child with sickle cell anemia, a 25% chance of producing a child with normal hemoglobin, and a 50% chance of producing a child with the sickle cell trait. Each child of one parent with sickle cell anemia and one normal parent will have the sickle cell trait. Should a person with sickle cell anemia mate with one with the trait there is a 50% chance that a child will carry a double abnormality or a sickling disease.

Thus it can be seen from the above accounts that the disease is serious and

that control can only be obtained by examing blacks for the trait and total family management of those partners who both have the trait. This is what the plaintiffs desire the Court to do for black inmates confined in the Department of Correction: examine them for the trait so they can have family planning and counseling if necessary.

Although this Court is sympathetic with the plaintiffs' cause and deeply concerned with the control of sickle cell anemia, it does not appear that the claim is cognizable under the Civil Rights Act.

■ First of all, this Court points out that state prison officials must be vested with a wide degree of discretion in determining the nature of medical treatment to be afforded state prisoners. It is not the function of federal courts to interfere with the conduct of state officials in carrying out such duties. See United States v. Ragen, 323 F.2d 410 (7th Cir. 1963). In cases where the federal courts have entertained civil rights suits for lack of medical care, there has usually been a severe and obvious injury and a virtual abdication by the state of its responsibility for providing reasonable medical services for its inmates. See Hughes v. Noble, 295 F.2d 495 (5th Cir. 1961) (plaintiff jailed immediately after auto accident despite neck and back injuries); Coleman v. Johnston, 247 F.2d 273 (7th Cir. 1957) (bullet wound in leg during arrest not treated with subsequent loss of leg to plaintiff); Redding v. Pate, 220 F.Supp. 124 (N.D.Ill.1963) (inmate an epileptic who did not receive adequate medical treatment).

■ In cases where inadequate medical treatment is alleged, a hearing is not necessary if prison and medical records made in the ordinary course of operations are sufficient to refute the inmate's claims. See Jolly v. Brown, Mem.Dec.No. 13,405 (4th Cir. June 26, 1970); Daye v. Rice, Mem.Dec.No. 13,408 (4th Cir. July 23, 1969). However, the contention lodged in the instant case is that the defendants do not routinely provide a desired medical care, and such is not denied. In this regard, it is noted that the deprivation of essential medical treatment for State penal inmates may, in certain circumstances, raise an issue cognizable by the federal courts under § 1983. See Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966); and Hirons v. Director, 351 F.2d 613 (4th Cir. 1965). Hirons stated:

"Construing the petition in a light most favorable to the inmate, it alleges conduct which may be an improper deprivation of medical treatment seriously endangering the petitioner's well-being." p. 614.

Hirons concerned an operation on plaintiff's jaw.

■ In the instant case it is admitted by defendants that black inmates are not routinely examined for sickle cell anemia. Nor is it refuted by plaintiffs that defendants do provide care when symptoms of the disease are evident. (See affidavit of Dr. Broughton filed January 21, 1974 concerning treatment of inmates Stewart, Parker, Sneed, and Ingram). Viewing the authority above and taking the plaintiffs' contention as true, this Court feels they have recourse under § 1983 only if they were deprived of essential medical care by the State, depending on all the facts and circumstances. Since the plaintiffs do not allege or show that defendants fail to provide proper treatment for sickle cell anemia victims and it is apparent from the record that treatment is provided when symptoms of the disease are evident, plaintiffs cannot say that they are deprived of essential medical treatment seriously endangering their well-being. Nor can the State's actions be a virtual abdication of their responsibility or lack of care in the face of a severe and obvious injury.

The plaintiffs' claim that all black inmates be routinely examined for sickle cell anemia must fail for a variety of reasons. First, from the discussion above, the general prison population is obviously not endangered personally by

the disease and therefore this Court cannot order the prison officials to act. Secondly, and more importantly, whether inmates are routinely examined is a State or legislative decision and not one for the judiciary. It is a matter of State policy whether such an examination will be included in the regular physical examination. Also, on the national level, Congress has enacted the National Sickle Cell Anemia Control Act authorizing $20 million to fund the Act for the fiscal year 1973, $30 million for 1974, and $35 million for 1975. A control of the disease through blood tests and planning programs is expensive. Doctors must make tests, laboratories must be set up and staffed, and counselors must be employed to follow-up on the test results. The Government funds appropriated by Congress are meant to be used for research and control and therefore it is up to Congress and not the courts to determine how and where the funds will be spent. It plainly appears that control of the disease is meant to be for the legislative branch of both the State and Federal governments, and possibly the executive branch, but certainly not the judicial branch.

Finally, a matter of practicality must be noted. If sickle cell anemia were raised to a constitutional level, other serious diseases would have to be so treated. Physical examinations for cancer and heart trouble are costly and time consuming. Most people in this country cannot afford a complete examination and only have a basic physical every year or two. Then if symptoms of other diseases develop, they go in for further checks. To order inmates to have a more comprehensive physical examination than the general population would certainly not be in order. A claim in this respect is not one of constitutional magnitude.

For the above reasons, this Court does not feel the plaintiffs' complaint raises a constitutional issue under § 1983 and therefore must be dismissed. However, the plaintiffs are aware of a grave problem and appear to be concerned individuals. They should direct their efforts to State and National legislators and explain their ideas. Maybe some day, through mutual efforts, sickle cell anemia will be eradicated from the black population.