**Mark Allen WYNN, Plaintiff,**

v.

**CORRECTIONAL OFFICER MUNDO,
et al., Defendants.**

No. 1:04CV365.

United States District Court,
M.D. North Carolina.

Feb. 7, 2005.

834

Mark Allen Wynn, Laurinburg, NC, pro se.

## ORDER

BULLOCK, District Judge.

On December 9, 2004, in accordance with 28 U.S.C. § 636(b), the Recommendation of the United States Magistrate Judge was filed and notice was served on the parties in this action and a copy was given to the court.

Within the time limitation set forth in the statute, Plaintiff objected to the Recommendation.

The court has appropriately reviewed the portions of the Magistrate Judge's report to which objection was made and has made a de novo determination which is in accord with the Magistrate Judge's report. The court therefore adopts the Magistrate Judge's recommendation.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment [Pleading no. 12] be **GRANTED** and that Plaintiff's action be dismissed with prejudice. A judgment dismissing this action will be entered contemporaneously with this Order.

## RECOMMENDATION AND OR-DER OF UNITED STATES MAGISTRATE JUDGE

DIXON, United States Magistrate Judge.

This matter is before the court on several motions: Defendants' motion for summary judgment (docket no. 12), Plaintiff's motion to strike exhibit B (docket no. 18), and Plaintiff's motion to strike Dr. Stover's affidavit (docket no. 21). For the reasons which follow, it will be recommended that Defendants' motion for summary judgment be granted. Furthermore, the motions to strike will be summarily denied.

### Background

Plaintiff is a state court prisoner who, at the time of the incidents giving rise to this

claim, was housed at Albemarle Correctional Institution ("Albemarle"). In this action, filed pursuant to 42 U.S.C. § 1983, Plaintiff complains that he was denied medical treatment for a life threatening illness and was placed in segregation rather than being given emergency treatment. Plaintiff specifically claims that "[d]espite his aggr[a]vated state, [he] was detained in segregation and denied medical attention for over twenty[-]four hours." Argument of Law, p. 5, attached to Complaint (docket no. 1). He emphasizes the severity of his condition by asserting that "[u]pon finally being examined by the medical staff, the plaintiff was immediately placed on medications and taken to the hospital. The plaintiff was then quickly diagnosed with pneumonia." *Id.*

Plaintiff has named as Defendants correctional officers from his assigned housing and from segregation (Mundo, Honbarrier, Bruton, Smith, Caviness, and Eudy), and supervisory officers (sergeants Chestnut and Porter and lieutenant Fletcher). Plaintiff characterizes Defendants' actions as "deliberate indifference" to his medical needs, and he frames his complaint as a violation of his constitutional rights. Plaintiff does not appear to have ever properly served Defendants Caviness and Eudy, and they are, therefore, not parties to this case. Plaintiff paid his own filing fee and was never given in forma pauperis status; therefore, service of process was entirely his responsibility.[1]

Plaintiff's complaint revolves around incidents that took place between December 16 and December 18, 2002. According to Plaintiff, at approximately 8:00 p.m. on December 16, he notified Defendant Mundo that he was having medical complica-tions at which point several prisoners helped him out of his bunk and Defendant Mundo ordered that his mattress be placed on the floor. Plaintiff self-declared a medical emergency, Defendant Mundo informed his superiors and then informed Plaintiff that there were no medical staff on duty and that his superiors would not authorize a designation of medical emergency required to bring in medical staff.

Although Plaintiff was placed in segregation so that he could have a lower bunk, he was neither taken to the hospital nor visited by medical staff until 8:00 p.m. on December 17 (*i.e.,* twenty-four hours after his first complaint). At that time Nurse Connors examined Plaintiff, identified symptoms of an upper respiratory infection, and immediately started Plaintiff on medication. Plaintiff was examined by Dr. Hassan at 6:00 a.m. on December 18, and was subsequently transported to Stanley Memorial Hospital where he was confirmed to have, and was treated for, pneumonia.

Plaintiff also complains that during the approximate twenty-four hour interval between his original complaint and his first visit with medical staff, he made numerous requests for treatment and "pleaded with [D]efendants Honbarrier, Chestnut, [and] Porter" to get him medical attention. *Id.* at 8. He also claims to have fallen down some stairs, hurting his back and neck, attempting to get medical care. His claim of falling and his claim of injury are both contested.

## II. Discussion

### *Defendants' Motion for Summary Judgment*

#### *1. Summary Judgment Standard*

■ Summary judgment is appropriate when there exists no genuine issue of ma-

1. Under 28 U.S.C § 1915(d), this court requires that officers of the court issue and serve process for plaintiffs who have been granted in forma pauperis status.

terial fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir.1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir.1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).

When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997). Therefore, this court must view the evidence in the light most favorable to Plaintiff. Even when considered in the best light, Plaintiff has not demonstrated deliberate indifference and, therefore, cannot survive summary judgment.

## 2. Deliberate Indifference

■ "Deliberate indifference is a very high standard-a showing of mere negli-

gence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999). This very high standard is not an objective standard, along the lines of "civil-law recklessness." It is, rather, a subjective standard akin to criminal law recklessness that focuses on the defendant's conscious disregard of a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 836–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In other words, to be deliberately indifferent, a prison official must possess two sorts of knowledge. First, he must know of a risk: "the official must ... be aware of facts from which the inference could be drawn that a substantial risk of serious harm [to an inmate's health or safety] exists." *Id.* at 838, 114 S.Ct. 1970. Second, "he must also draw the inference," *id.:* he must know that his actions are "inappropriate in light of that risk." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir.2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir.1997)). A plaintiff must prove that "the official [both] knows of and consciously disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 836–37, 114 S.Ct. 1970.

■ The first type of knowledge, a prison official's knowledge of a risk to an inmate's health, "is a question of fact, subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842, 114 S.Ct. 1970. For example, a factfinder may infer "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* It is not enough, however, that a reasonable officer *would have* found the risk to be obvious. *Rich*, 129 F.3d at 339–40. Rather, the risk of injury must be "so obvious that the fact-finder could conclude that the [officer] *did* know of it because he could not have failed to know of it." *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir.1995).

The second type of knowledge may be inferred. *See Parrish ex. rel. Lee,* 372 F.3d at 303. In light of an official's knowledge of a substantial risk to a prisoner's health or safety, "a factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances." *Id.* In determining whether prison officials are deliberately indifferent to a prisoner's serious medical needs, the court may generally rely on medical records concerning examination and treatment of the prisoner. *Bennett v. Reed,* 534 F.Supp. 83, 87 (E.D.N.C.1981), *aff'd,* 676 F.2d 690 (4th Cir.1982). A hearing is unnecessary if "prison and medical records made in the ordinary course of operations are sufficient to refute the inmate's claims." *Ross v. Bounds,* 373 F.Supp. 450, 452 (E.D.N.C.1974).

Significantly, an "error of judgment" on the part of prison medical staff, or "inadvertent failure to provide adequate medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." *Boyce v. Alizaduh,* 595 F.2d 948, 953 (4th Cir.1979), *abrogated on other grounds by Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Mere negligence or medical malpractice is not sufficient to establish deliberate indifference. *See West v. Atkins,* 487 U.S. 42, 49 n. 8, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Rather, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement [or] supplying medical needs." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *see also Miltier v. Beorn,* 896 F.2d 848, 851–52 (4th Cir.1990) (to establish deliberate indifference, the plaintiff must show that treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness").[2]

In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir.1985). The Supreme Court has analyzed the ways in which prison officials may be found to act with deliberate indifference. First, health care providers may be indifferent toward a prisoner's medical needs. *Estelle,* 429 U.S. at 104–05, 97 S.Ct. 285. In order to establish that a health care provider's action constitutes deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Miltier,* 896 F.2d at 850. Likewise, nonmedical prison employees can be found to have acted with deliberate indifference if they intentionally delay or deny an inmate's access to medical care or intentionally interfere with prescribed treatment. *Estelle,* 429 U.S. at 104–05, 97 S.Ct. 285. A medical treatment claim cannot be brought against non-medical personnel, however, unless they were personally involved with a denial of treatment or deliberately interfered with prison doctors' treatment. *Miltier,* 896 F.2d at 850. Moreover, prison officials are entitled to

---

**2.** *Miltier* has been overruled by *Farmer* to the extent that it allowed a finding of deliberate indifference upon constructive knowledge, *see* *Brown v. Mitchell,* 308 F.Supp.2d 682, 708 n. 30 (E.D.Va.2004), but it is still good law for the proposition cited.

rely on the opinions, judgment and expertise of prison medical personnel in determining the course of treatment that is medically necessary and appropriate for an inmate. *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir.1995); *Miltier*, 896 F.2d at 854. Last of all, in this connection, an Eighth Amendment deliberate indifference violation, at least with respect to supervisory prison officials, is not shown by pointing to single, isolated incident(s). *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994).

■ The record does not support a finding that any Defendant acted in a way that was deliberately indifferent to a serious medical need. Plaintiff's evidence is insufficient to establish this claim. Even viewed in the light most favorable to the Plaintiff, the record shows that Defendants were not "deliberately indifferent" to Plaintiff's serious medical need(s).

To be sure, the argument can be made that Plaintiff was not even suffering from a serious medical condition. If this were the case, then the objective element of this claim, an official's actual knowledge of a risk to an inmates health or safety, would not be met. Perhaps more palatable is the argument that the symptoms which Plaintiff exhibited could not have signaled to the prison officials that he was, in fact, suffering from a serious medical condition. In this case, also, the objective element would also not be met.

■ "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Creech v. Nguyen*, 153 F.3d 719, 1998 WL 486354, at *5 (4th Cir.1998). Plaintiff complained of a fever, aching body, and chills. This court has found no case in which flu-like symptoms such as these have been held to demonstrate a serious medical need. Indeed, the regulations promulgated under the Family Medical Leave Act (FMLA) ordinarily exclude the common cold and flu from the definition of "serious medical condition". 29 C.F.R. § 825.114(c). Although Plaintiff's ailments resulted in a diagnosis of pneumonia, there is little reason to believe that a non-medical prison official would have diagnosed them as such.

Nevertheless, this court's summary judgment analysis does not rest on the belief that the prison officials could not have diagnosed Plaintiff as suffering from a serious medical condition. Rather, this court finds that the delay between Plaintiff's initial complaint and his receipt of medical treatment did not constitute deliberate indifference to his health or safety. Indeed, the Supreme Court has explained that failure to obtain immediate medical care constitutes an Eighth Amendment violation only if that delay was "objectively, sufficiently serious" to constitute the "denial of the minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. Furthermore, this court is persuaded that delay in the receipt of medical care only constitutes deliberate indifference where the plaintiff can show that the delay caused substantial harm. *See Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995), *abrogation on other grounds recognized by Reece v. Groose*, 60 F.3d 487 (8th Cir.1995); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993). This court finds the delay (and the provision of Ibuprofen and a lower bunk to Plaintiff during that delay) between Plaintiff's first complaints on the evening of December 16, 2002, and his visit to the hospital on the morning of December 18, 2002, to be far from uncivilized and the cause of no substantial harm. Therefore, this court finds that Plaintiff was not treated with deliberate indifference to a serious medical condition and cannot survive summary judgment on his § 1983

claim. None of the Defendants named in this case acted with deliberate indifference toward Plaintiff.[3]

## III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that Defendants' motion for summary judgment (docket no. 12) be GRANTED. Plaintiff's motions to strike (docket nos. 18 & 21) are summarily DENIED.

December 9, 2004.

---

[3]. This observation applies with equal force to Plaintiff's claim about a hurt back and neck suffered in a fall when he was trying to get care for his flu-like symptoms. It turns out that Plaintiff had a degenerative disc disease which likely developed over years, and which was not exacerbated by a supposed fall on or about December 16, 2002. *See* Stover Aff. (docket no. 14). In any event, Plaintiff's complaints about his back and neck were appropriately treated by medical personnel and these non-medical personnel whom Plaintiff has named as Defendants cannot be said to have been deliberately indifferent in the constitutional sense.