IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

**FILED**

**May 8, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0885

COMMONWEALTH OF PENNSYLVANIA,
PENNSYLVANIA FISH AND BOAT COMMISSION,
Plaintiff Below, Petitioner

v.

CONSOL ENERGY, INC.,
CONSOLIDATION COAL COMPANY,
Defendants Below, Respondents

Appeal from the Circuit Court of Monongalia County
The Honorable Russell M. Clawges, Jr., Judge
Civil Action No. 11-C-556

REVERSED AND REMANDED

Submitted:  April 8, 2014
Filed:  May 8, 2014

Robert P. Fitzsimmons, Esq.
Fitzsimmons Law Firm
Wheeling, West Virginia
and
Sharon Z. Hall, Esq.
Zimmer Kunz PLLC
Pittsburgh, Pennsylvania
Counsel for Petitioner

Christopher B. Power, Esq.
Mychal S. Schulz, Esq.
Jennifer J. Hicks, Esq.
Dinsmore & Shohl LLP
Charleston, West Virginia
Counsel for Respondents

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick,* 194 W.Va. 770, 461 S.E.2d 516 (1995).

2.      "Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an 'injury-in-fact'--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court." Syl. Pt. 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002).

3.      "Although an express grant of powers to an administrative agency will be determined to include such other powers as are necessarily or reasonably incident to the powers granted, the agency's powers should not be extended by implication beyond what may be necessary for their just and reasonable execution." Syl. Pt. 3, *Walker v. W.Va. Ethics Com'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997).

**Per Curiam:**

This action is before the Court upon the appeal of the Commonwealth of Pennsylvania, Pennsylvania Fish and Boat Commission ("PFBC"), from the July 12, 2013, order of the Circuit Court of Monongalia County dismissing its complaint against Consol Energy, Inc. and Consolidation Coal Company (collectively "Consol"). For the reasons that follow, this Court concludes PFBC has standing to file this civil action in West Virginia to seek recovery of damages for losses of fish and aquatic life allegedly caused by Consol's discharges of pollutants into a stream which flows between West Virginia and Pennsylvania. We reverse the order of the circuit court and remand this action for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

PFBC is an independent administrative agency of the Commonwealth of Pennsylvania charged with protecting, preserving, and managing fish within the Commonwealth and overseeing jurisdictional responsibility for fishing and recreational boating. *See* 30 Pa. Cons. Stat. §§ 321, 322 (1980). Consol operates long wall coal mining operations in West Virginia and Pennsylvania. As part of the mining operations, Consol applied for and received National Pollution Discharge Elimination System ("NPDES") permits from the West Virginia Department of Environmental Protection ("WVDEP"), which regulated the point source discharges from Consol's mines into certain waterways including Dunkard Creek.

1

In September of 2009, a massive fish kill occurred in Dunkard Creek, a forty-five mile stream that runs across the Pennsylvania and West Virginia border. The United States Environmental Protection Agency ("EPA") immediately joined other state and federal environmental agencies in the fish kill investigation, including the WVDEP, the Pennsylvania Department of Environmental Protection, and PFBC. Water samples taken during the investigation identified elevated levels of chloride and total dissolved solids ("TDS") in Dunkard Creek. Chad Harsh, a lead environmental scientist of the EPA, stated:

> the cause of the fish kill was the release of a toxin produced by *Prymnesium parvumi*, also referred to as golden algae. This species of algae thrive in saline conditions. Discharges of mine pool water into Dunkard Creek with elevated levels of chloride and TDS from Consol's Blacksville No. 2 and St. Leo mines contributed substantially to the conditions favorable for the golden algae to bloom.

The United States Department of Justice and the EPA brought a civil action against Consol in the United States District Court for the Northern District of West Virginia pursuant to Section 309(b) and (d) of the Federal Water Pollution Control Act ("Clean Water Act" or the "CWA"), 33 U.S.C. §§ 1319(b) and (d) (1990). They alleged Consol discharged pollutants into Dunkard Creek and other waterways in violation of the CWA and in violation of the conditions and limitations of the NPDES issued by West Virginia that created and/or contributed to the conditions favorable for the golden algae to thrive and bloom which ultimately led to the fish kill. That civil action was resolved by a consent decree. Without admitting liability, Consol agreed to pay a $5.5 million civil

2

penalty. In addition to the civil penalty, the parties agreed Consol would spend over $200 million on a treatment facility to treat its mine water before it is discharged into waterways of the United States. A separate consent decree required Consol to pay WVDEP an additional $500,000 for loss of fish and aquatic life to West Virginia. The federal agencies did not pursue any relief for the damages that occurred in the waters of the Commonwealth of Pennsylvania.

By letter dated August 2, 2011, PFBC requested authorization from the Pennsylvania Attorney General to initiate a civil action against Consol for damages resulting from the 2009 fish kill. PFBC explained the federal preemption doctrine limits state law claims where interstate water pollution is caused by a point source located in another state. *See Int'l Paper Co. v. Oulette*, 479 U.S. 481, 494 (1987) (finding the CWA does not completely preempt all state common law claims). PFBC stated: "the Commonwealth's claims must be based upon the law of the state where the point source is located, in this case, West Virginia." PFBC estimated the damage for loss of aquatic life in the Commonwealth and loss of recreational opportunities for Pennsylvania anglers exceeded $1 million. On August 4, 2011, the Pennsylvania Attorney General delegated authority to PFBC to carry out this litigation.

PFBC filed suit in the Circuit Court of Monongalia County, West Virginia, on September 2, 2011, against Consol for damages allegedly caused by Consol's discharge of waste water into Dunkard Creek in West Virginia which flows into

Pennsylvania. PFBC alleged that between May and November of 2009, Consol discharged significant amounts of chloride through their mining operations into Dunkard Creek near Greene County, Pennsylvania. PFBC alleged these levels exceeded daily maximum effluent limitations within the NPDES permits. During this same period, high levels of TDS were present in the receiving waters which led to and created the release of toxins from golden algae within Dunkard Creek that were fatal to fish and other aquatic wildlife. PFBC alleged the Commonwealth suffered significant losses of fish and aquatic life. PFBC estimated its recorded share of the 2009 fish kill at over forty-two thousand fish, comprised of forty species; over fifteen thousand freshwater mussels, comprised of fourteen species; and over six thousand mudpuppies.[1]

In the complaint, PFBC set forth West Virginia common law tort claims against Consol including nuisance (Count I), trespass (Count II), negligence and negligence per se (Counts III and IV). PFBC seeks various damages including recovery for the fish, freshwater mussels, and mudpuppies killed, the costs incurred in investigating, cleaning up and documenting the fish kill, any future costs associated with restoration of aquatic life in the Pennsylvania sections of Dunkard Creek, and punitive damages in addition to attorney's fees and costs.

---

[1] A mudpuppy is an aquatic salamander commonly known as a waterdog.

Consol removed the civil action to the United States District Court for the Northern District of West Virginia, based upon 28 United States Code § 1331 (1980), federal jurisdiction, claiming all of PFBC's West Virginia common law claims were completely preempted by the CWA. PFBC filed a motion to remand to state court, which the federal court granted on September 4, 2012. Following briefing and oral argument, the federal court found PFBC's West Virginia common law claims were not completely preempted by the CWA, and, therefore, it lacked jurisdiction to adjudicate the action. The federal court found the CWA governs actions based upon interstate water pollution, but it specifically preserves the availability of state law causes of action brought by any "person" as defined by the Act,[2] under the law of the source state. *See Ouellette*, 479 U.S. at 492. ("Although Congress intended to dominate the field of pollution regulation, the saving clause negates the inference that Congress 'left no room' for state causes of action.").

Following remand to state court, Consol filed a motion to dismiss the complaint pursuant to Rule 12(b)(1) of the West Virginia Rules of Civil Procedure on the ground that the circuit court lacked subject matter jurisdiction. Consol argued: 1) PFBC's legal authority to allege claims for loss of aquatic life is limited to Pennsylvania causes of

---

[2] In the definitions section of the CWA, subsection five defines the term "person" to include the following: "individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a state, or any interstate body." 33 U.S.C. § 1362(5).

action for losses caused by violations of Pennsylvania law; and 2) the West Virginia Water Pollution Control Act ("WVWPCA"), West Virginia Code § 22-11-25 (2009), is the exclusive basis for seeking recovery for loss of fish or aquatic life in West Virginia courts and PFBC had no authority to bring an action under the WVWPCA.

By order entered July 12, 2013, the circuit court granted Consol's motion to dismiss. The circuit court found PFBC is "only authorized to bring civil suits for damages as a result of violations of Pennsylvania law, based on the language of 30 Pa. C.S. § 2506(b) [1980]" and the "narrow and explicit language does not allow . . . any implied right" to bring a cause of action under West Virginia common law.[3] PFBC appeals this order.

## II. STANDARD OF REVIEW

Consol's motion to dismiss the complaint, granted by the circuit court, was filed under Rule 12(b)(1) of the West Virginia Rules of Civil Procedure, concerning lack

---

[3] The circuit court rejected Consol's argument regarding the WVWPCA and stated:

> Even if West Virginia Code § 22-11-25 creates the only available cause of action for loss of fish under the jurisdiction of West Virginia, it does not protect fish or aquatic life of another State. [PFBC] is pursuing this action for the loss of aquatic life inhabiting waters of Pennsylvania only. Therefore, this argument is not applicable and has no bearing on [PFBC's] authority to seek recovery under West Virginia common law.

of subject matter jurisdiction. Thus, this Court's review of the ruling of the circuit court is de novo. We held in syllabus point two of *State ex rel. McGraw v. Scott Runyan Pontiac-Buick,* 194 W.Va. 770, 461 S.E.2d 516 (1995): "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" *See* Cleckley, Davis and Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(1) at 328 (4th ed. 2012) (confirming that appellate review of a dismissal under a Rule 12(b)(1) facial attack is de novo).

The de novo standard is particularly applicable in this matter insofar as the circuit court's order raises a purely legal issue: whether a Pennsylvania state agency has standing to bring its West Virginia common law tort claims of nuisance, trespass, and negligence in a West Virginia circuit court. As this Court held in syllabus point two of *State ex rel. Orlofske v. City of Wheeling,* 212 W.Va. 538, 575 S.E.2d 148 (2002): "'Where the issue on an appeal from the circuit court is clearly a question of law . . . we apply a *de novo* standard of review' Syllabus point 1, in part, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)." With these principles in mind, we consider the arguments of the parties.

## III.  DISCUSSION

As a preliminary matter, this Court notes that Consol filed its motion to dismiss PFBC's complaint alleging lack of subject matter jurisdiction. *See* Rule 12(b)(1) W.Va. R. Civ. Pro. Jurisdiction is the inherent power of a court to decide a case. *See* Syl.

7

Pt. 2, *Vanover v. Stonewall Cas. Co.*, 169 W.Va. 759, 289 S.E.2d 505 (1982) ("'Jurisdiction deals with the power of the court, while venue deals with the place in which an action may be tried.' Syllabus Point 7, *Lester v. Rose*, 147 W.Va. 575, 130 S.E.2d 80 (1963)."). Without question, the circuit court has jurisdiction to decide PFBC's West Virginia common law tort claims under the general powers set forth in article VIII, § 6 of the Constitution of West Virginia. Considering the amount in controversy, the circuit court has original and general jurisdiction of this matter. *See* W.Va. Code § 51-2-2 (2008). As the federal court found in remanding this case to state court, PFBC's West Virginia common law causes of action of nuisance, trespass, and negligence were not preempted by the CWA because the claims were asserted under the law of the source state.

On appeal to this Court, the parties focus on PFBC's standing. PFBC maintains it has standing to bring this cause of action against Consol in West Virginia for the killing of the Commonwealth's fish and aquatic life. PFBC raises two assignments of error. First, PFBC argues the circuit court erred in holding it lacked standing under the pertinent statute and the general authority and powers of the agency. Second, PFBC contends the circuit court erred by holding that the delegation of authority by the Pennsylvania Attorney General for PFBC to bring the action in West Virginia did not establish standing. In response, Consol claims the circuit court's ruling should be affirmed because PFBC lacked standing under the controlling statute and the delegation

8

of authority by the Pennsylvania Attorney General did not create any additional rights in PFBC beyond that statute.

Therefore, the sole issue on appeal is whether PFBC has standing to bring this action. The question of standing is whether PFBC is entitled to have a West Virginia circuit court decide the merits of the dispute. In other words, the question is whether PFBC is a proper party to request an adjudication of the claims. "Further, standing is gauged by the specific common law, statutory or constitutional claims that a party presents." Cleckley, Davis and Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(1) at 329. To resolve this issue, we begin with the general rule that

> [s]tanding is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

Syl. Pt. 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002).

Viewing the complaint in the light most favorable to PFBC,[4] we readily conclude that it has met the three elements set forth in *Findley* to establish standing. First, the factual allegations in the complaint demonstrate PFBC suffered an actual and concrete injury as a result of the 2009 fish kill. PFBC alleges the Commonwealth suffered significant losses of fish and aquatic life. Second, PFBC alleges a causal connection between the fish kill and Consol's discharge of pollutants into Dunkard Creek in violation of the limitations of the NPDES issued by West Virginia that affected Pennsylvania waters. Third, it is likely that the injury will be redressed through a favorable decision of the circuit court should a jury award damages to PFBC for the loss of fish and aquatic life, the costs incurred in investigating, cleaning up and documenting the fish kill, and any future costs associated with stream restoration.

Having found PFBC meets the *Findley* factors, we now address the specific question of whether PFBC, as an agency of the Commonwealth of Pennsylvania, has statutory authority and/or implicit power to bring a cause of action in West Virginia under West Virginia common law. PFBC's authority to bring this action must be either expressly conferred by the legislature or given by necessary implication. *See*

---

[4] *See generally Collia v. McJunkin*, 178 W.Va. 158, 159, 358 S.E.2d 242, 243 (1987) ("[m]otions to dismiss are generally viewed with disfavor because the complaint is to be construed in the light most favorable to the plaintiff and its allegations are to be taken as true."); and *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) (stating for purposes of ruling on a motion to dismiss for lack of standing, a complaint must be viewed in the light most favorable to the plaintiff; all material allegations of the complaint must be accepted as true).

10

*Commonwealth v. Am. Ice Co.,* 178 A.2d 768, 773 (Pa. 1962) ("Only those powers within the legislative grant, either express or necessarily implied, can be exercised by the administrative body."); s*ee also Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,* 253 S.W.3d 184, 192 (Tex. 2007) (recognizing a state agency's powers are limited to: 1) powers expressly conferred by the legislature; and 2) implied powers that are reasonably necessary to carry out its express responsibilities). This Court has held: "Although an express grant of powers to an administrative agency will be determined to include such other powers as are necessarily or reasonably incident to the powers granted, the agency's powers should not be extended by implication beyond what may be necessary for their just and reasonable execution." Syl. Pt. 3, *Walker v. W.Va. Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997).

Consol argues PFBC is only authorized to bring civil suits for damages as a result of violations of Pennsylvania law. Consol focuses primarily on the following sentence from the Pennsylvania Fish and Boat Code:

> The commission, as an agency of the Commonwealth authorized to regulate, control, manage and perpetuate fish may, in addition to criminal penalties provided in this title, bring civil suits in trespass on behalf of the Commonwealth for the value of any fish killed or any stream or streambed destroyed or injured *in violation of this chapter*.

30 Pa. Const. Stat. § 2506(b), in part (1980)(emphasis added).

PFBC refutes this restrictive reading of the statute. PFBC states it has the authority to bring this cause of action under the powers expressly conferred to it under the entirety of the Pennsylvania Fish and Boat Code and related Pennsylvania case law explaining the implicit powers held by governmental agencies. We agree. The applicable statute provides, in its totality:

> § 2506. Commonwealth actions for damage to fish.
>
> (a) Declaration of policy.--*The Commonwealth has sufficient interest in fish living in a free state to give it standing, through its authorized agencies, to recover damages in a civil action against any person who kills any fish or who injures any streams or streambeds by pollution or littering.* The proprietary ownership, jurisdiction and control of fish, living free in nature, are vested in this Commonwealth by virtue of the continued expenditure of its funds and its efforts to protect, perpetuate, propagate and maintain the fish population as a renewable natural resource of this Commonwealth.
>
> (b) General rule.--The commission, as an agency of the Commonwealth authorized to regulate, control, manage and perpetuate fish may, in addition to criminal penalties provided in this title, bring civil suits in trespass on behalf of the Commonwealth for the value of any fish killed or any stream or streambed destroyed or injured in violation of this chapter. In determining the value of fish killed, the commission may consider all factors that give value to such fish. These factors may include, but need not be limited to, the commercial resale value, the replacement costs or the recreational value of angling for the fish killed. In addition, the commission is entitled to recover the costs of gathering the evidence, including expert testimony, in any civil suit brought under this section where the defendant is found otherwise liable for damages.

*Id.* (emphasis added).

A plain reading of the statute demonstrates PFBC possesses broad statutory authority to commence "a civil action against any person who kills any fish[.]" *Id.* The very purpose and function of PFBC is to manage and protect the fish and aquatic life of the Commonwealth. The statute clearly accords PFBC the authority to pursue litigation to seek redress on behalf of the citizens of the Commonwealth when fish are killed by the actions of others.[5]

PFBC is charged with enforcing the laws of the Commonwealth of Pennsylvania with regard to the protection of fish. Under subsection (b) of § 2506 of the Pennsylvania Fish and Boat Code, PFBC may bring civil suits in trespass, in addition to criminal penalties, for the value of any fish killed or any stream of streambed destroyed or injured in violation of the Pennsylvania Fish and Boat Code. However, subsection (b) does not contain limiting language that restricts PFBC's standing to litigate only those actions. We reject Consol's argument that subsection (b) does so because it is in direct contradiction to the stated policy and purpose of the agency and the standing specifically conferred to PFBC by subsection (a) that it may bring a civil action against "any person who kills any fish[.]" *Id.* In refusing a similarly narrow interpretation of an agency's

---

[5] When a West Virginia statute has such express language as exists in this case, this Court applies its plain meaning as it is not necessary to resort to any interpretation. *See* Syl. Pt. 3, *Subcarrier Commc'ns, Inc. v. Nield,* 218 W.Va. 292, 624 S.E.2d 729 (2005) ("'Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.' Syllabus point 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970).").

powers, the Supreme Court of Pennsylvania held it was "inappropriate to determine the power of an administrative agency in a linguistic vacuum" and "the power of administrative agencies includes such powers as are implied necessarily." *Commonwealth, Dep't of Envtl. Res. v. Butler Cnty Mushroom Farm*, 454 A.2d 1, 6 (Pa. 1982).

In addition to the Pennsylvania legislature's express grant of powers to PFBC, its authority to bring this civil action is reasonably incident to the agency's duties and responsibilities to protect, preserve, and manage fish within the Commonwealth of Pennsylvania. The Supreme Court of Pennsylvania has stated:

> Although our law of standing is generally articulated in terms of whether a would-be litigant has a "substantial interest" in the controverted matter, and whether he has been "aggrieved" or "adversely affected" by the action in question, we must remain mindful that the purpose of the "standing" requirement is to insure that a legal challenge is by a proper party. *Application of Biester* [409 A.2d 848 (Pa. 1979)]. The terms "substantial interest", "aggrieved" and "adversely affected" are the general, usual guides in that regard, but they are not the only ones. For example, when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters. From this it must follow that, unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns. In such circumstances the legislature has implicitly ordained that such an agency is a proper party litigant, i.e., that it has "standing."

*Commonwealth, Pa. Game Comm'n v. Commonwealth, Dep't of Envtl. Res.*, 555 A.2d 812, 815-16 (Pa. 1989). *Accord Commonwealth v. Beam*, 788 A.2d 357, 360 (Pa. 2002).

14

*See also U.S. ex rel. Chapman v. Fed. Power Comm'n*, 345 U.S. 153, 173 (1953) (finding Secretary of Interior had standing to challenge the licensing of a new hydroelectric generating station because it impacted upon the Department of Interior's general statutory duties relating to the conservation of the nation's water resources); and *Racine Fire and Police Comm'n v. Stanfield*, 234 N.W.2d 307, 309 (Wis. 1975) (explaining that a particular power or duty conferred by statute, may, of necessity, require the additional power to maintain or defend an action arising out of that power or duty).

Based on the foregoing, we find that PFBC has a substantial interest in the fish and aquatic life under its control sufficient to give it standing to file suit in West Virginia and bring West Virginia common law tort claims against Consol in the Circuit Court of Monongalia County to seek recovery of damages as a result of the 2009 fish kill. The pertinent statute confers standing to PFBC "to recover damages in a civil action against any person who kills any fish." 30 Pa. Const. Stat. § 2506(a). Further, PFBC is a Commonwealth agency explicitly charged by statute with the obligation and authority to regulate, protect, manage and preserve the fish and aquatic life of the Commonwealth and the waters entrusted to its care. *See* Pa. Const. Stat. §§ 321, 322. Therefore, PFBC is a

15

proper party litigant in this civil action because it has a legislatively conferred interest in this matter. [6]

## IV.  CONCLUSION

For the reasons set forth above, the July 12, 2013, order of the Circuit Court of Monongalia County is reversed, and this action is remanded for further proceedings.

Reversed and remanded.

---

[6] We have resolved the matter on appeal by addressing PFBC's statutory authority and implicit power to bring this cause of action; it is therefore not necessary that we reach the merits of PFBC's second assignment of error.