**FILED**

**June 9, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Zack Damron,**
**Petitioner,**

**vs.)  No. 20-0862** (Kanawha County 18-C-1391)

**Primecare Medical of West Virginia, Inc.,**
**Respondent.**

## MEMORANDUM DECISION

Petitioner, Zack Damron, by counsel, Paul M. Strobel, appeals the Circuit Court of Kanawha County's dismissal of his complaint against Respondent, PrimeCare Medical of West Virginia, Inc., who, by its counsel D.C. Offutt, Jr., Anne Liles O'Hare, and Mark R. Simonton, filed a response.  In his petition, Petitioner alleges that the circuit court "erred in dismissing [his] constitutional claim for deliberate indifference pursuant to 42 U.S.C. § 1983 by requiring a certificate of merit when it applied the [Medical Professional Liability Act] to [his] cause of action."

As more fully explained herein, we agree that the circuit court correctly dismissed the complaint for lack of subject matter jurisdiction.  Therefore, Petitioner did not establish that the circuit court's rulings were in error.  Having considered the parties' briefs, oral arguments and the record on appeal, the Court finds no substantial question of law and no prejudicial error.  Accordingly, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

We review the grant of a motion to dismiss under a *de novo* standard of review.  *See* Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.").  *See also Commonwealth, Pa. Fish & Boat Comm'n v. Consol Energy, Inc.*, 233 W. Va. 409, 413, 758 S.E.2d 762, 766 (2014) (citing Cleckley, Davis and Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(1) at 328 (4th ed.2012) (confirming that appellate review of a dismissal under a Rule 12(b)(1) facial attack is de novo)).

Jurisdiction is the inherent power of a court to decide a case. *See* Syl. Pt. 2, *Vanover v. Stonewall Cas. Co.,* 169 W.Va. 759, 289 S.E.2d 505 (1982) ("'Jurisdiction deals with the power of the court, while venue deals with the place in which an action may be tried.' Syllabus Point 7, *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 (1963).").  Under the Medical Professional Liability Act ("MPLA"), a plaintiff is required to take certain steps to ensure that a circuit court has jurisdiction to hear a medical negligence suit. *See* Syl. Pt. 2, *State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 835 S.E.2d 579 (2019).  ("The pre-suit notice

1

requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction."). In an attempt to avoid application of the MPLA, Petitioner stated in his complaint and amended complaint that he was not pleading a medical negligence claim and he later agreed that he was dismissing any MPLA claims.

According to the amended complaint, on or about October 5, 2016, Petitioner, while incarcerated at the Western Regional Jail in Barboursville, West Virginia, got into a fight with another inmate. As a result of that fight, Petitioner was injured and was taken to the medical section of the Western Regional Jail, where his jaw was x-rayed and it was determined that Petitioner had suffered a broken jaw. Petitioner alleges in his amended complaint that Respondent was "responsible for facilitating the transportation of inmates for medical care where needed," that Respondent "learned through x-rays that [Petitioner's] jaw was fractured, and "[d]espite [such] knowledge, [Respondent] delayed sending [Petitioner] to a specialist for treatment." Ultimately, Petitioner alleged such "conduct . . . resulted in permanent physical harm and injury to [Petitioner] and . . . [Respondent's conduct] amounts to deliberate indifference and/or cruel and unusual punishment." Petitioner alleges such conduct amounted to deliberate indifference because by the time Petitioner was taken to a medical specialist on November 3, 2016, he "was informed that nothing could be done for his jaw because extensive time had elapsed from the time [sic] his injury. [Petitioner] now suffers from a misaligned jaw."

Petitioner's amended complaint contained five separate causes of action. Count one sought damages for a violation of West Virginia's Constitution. Count two claimed Respondent was deliberately indifferent to Petitioner's medical needs. Count three alleged intentional infliction of emotional distress and/or outrageous conduct. Count four maintained a claim for negligence and count five was a claim alleging violation of policy and procedure. Although Petitioner maintains in both his original complaint and the amended complaint (hereinafter collectively, "complaint") that "[t]he complaint as currently drafted does not assert a claim for medical negligence," prior to the filing of the original complaint, Petitioner submitted a Notice of Claim, pursuant to West Virginia Code § 55-7B-6(c)[1] to place Respondent on notice of a potential medical malpractice

---

[1] The provisions of West Virginia Code §§ 55-7B-1 – 55-7B-12 are known as the MPLA. West Virginia Code § 55-7B-6(c) (2017) provides a statutory exception which allows a claimant to not provide a screening certificate of merit when alleging an MPLA claim:

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

claim and to assert his position that a screening certificate of merit would be unnecessary to sustain his claim. *See* W. Va. Code § 55-7B-6(c) (2017).

Respondent filed a motion to dismiss, or in the alternative, for summary judgment, alleging that: 1) Petitioner was required to provide a screening certificate of merit, 2) the amended complaint was filed outside the statute of limitations, 3) Petitioner could not recover damages for violations of the West Virginia Constitution, 4) the complaint did not state a claim for deliberate indifference, and 5) the claims against John Doe defendants did not comply with pleading requirements. The parties agreed that Count I should be dismissed as Petitioner could not recover monetary damages under the West Virginia Constitution. As to the other issues raised in the motion, the circuit court denied the motion to dismiss, giving Petitioner sixty days to provide a screening certificate of merit and to amend his complaint to comply with the MPLA. Additionally, Petitioner was given thirty days to "substantiate a viable Eighth Amendment claim by filing a screening certificate of merit." Further, Petitioner was ordered to provide a short and plain statement of the claims against the John Doe Defendants.

Thereafter, Petitioner filed no amended complaint to address any of the issues noted by the circuit court and Respondent renewed its motion to dismiss. In Petitioner's response he maintained that he had pled a cause of action arising from deliberate indifference, rather than negligence. Petitioner further asserted that his deliberate indifference claim is not subject to the MPLA and that he had properly pled such claim. Respondent's motion alleged that the facts pled in the amended complaint stated a claim for medical negligence and that Petitioner's "deliberate indifference claim is merely a contemporaneous claim ultimately relating to the rendering, or failure to render, health care services."

The circuit court dismissed Petitioner's amended complaint.[2] In its order, the circuit court agreed with Respondent that the amended complaint sounded in negligence, rather than deliberate indifference:

> 22. All of Plaintiffs claims in this action, regardless of how they are pled, stem solely from the rendering, or alleged failure to render, 'health care' and therefore sound in terms of medical negligence.

> 23. Accordingly, Plaintiff is not permitted to hide behind the guise of a constitutional claim in order to avoid the mandatory application of the MPLA or otherwise excuse his failure to provide a [s]creening [c]ertificate of [m]erit.

---

*Id.* The Legislature has amended section 2 since the lawsuit in question was filed but such amendments are not relevant to this appeal.

[2] The only issue raised in this appeal alleges that the circuit court erred in dismissing the deliberate indifference claim.

3

On appeal, Petitioner urges this Court to reverse the circuit court's ruling, maintaining that the circuit court improperly applied the MPLA to Petitioner's deliberate indifference claim. However, the circuit court did not conclude that the MPLA applied to Petitioner's deliberate indifference claim. Rather, it concluded that Petitioner had not actually pled a deliberate indifference claim, citing that the allegations were under the "guise" of a deliberate indifference claim. Thus, we believe that this matter should be resolved on the issue of whether Petitioner alleged facts giving rise to a claim of deliberate indifference or whether the allegations in his complaint are, instead, merely claims of medical negligence. Here, we agree with the circuit court that Petitioner truly pled a medical negligence claim couched as a deliberate indifference claim. Our precedent relative to the MPLA requires a circuit court, and this Court, to look beyond the labels of causes of action and artful pleading and instead critically examine the allegations pled to determine whether the plaintiff's complained-of conduct falls under the MPLA's provisions.

> The failure to plead a claim as governed by the Medical Professional Liability Act, W. Va. Code § 55–7B–1, *et seq.,* does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of "health care" as defined by W. Va. Code § 55–7B–2(e) (2006) (Supp.2007), the Act applies regardless of how the claims have been pled.

Syl. Pt. 4, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007).

> As *Ethicon* makes clear, a plaintiff cannot avoid the MPLA by virtue of failing to expressly allege a malpractice claim. If a claim falls squarely under the MPLA, the manner in which a complaint is drafted will not prevent the invocation of the MPLA. *See, e.g., Ethicon*, 221 W.Va. at 707, 656 S.E.2d at 458 (approving circuit court's analysis that plaintiffs' labeling "as 'products' claims does not change the fundamental [MPLA] basis of this tort action"); *Gray v. Mena*, 218 W.Va. 564, 570, 625 S.E.2d 326, 332 (2005) (permitting plaintiff who opted not to bring MPLA action opportunity to amend complaint and comply with MPLA requirements rather than upholding dismissal for non-compliance with MPLA filing requirements). As we stressed in *Ethicon*, "the determination of whether a cause of action falls within the MPLA is based upon the factual circumstances giving rise to the cause of action, *not the type of claim asserted.*" 221 W.Va. at 702–03, 656 S.E.2d at 453–54 (emphasis supplied).

*Minnich v. MedExpress Urgent Care, Inc.-W. Va.*, 238 W. Va. 533, 537, 796 S.E.2d 642, 646 (2017). "It goes without saying that [a plaintiff] cannot avoid the MPLA with creative pleading." *State ex rel. W. Va. Univ. Hosp. v. Scott*, 246 W. Va. 184, ___, 866 S.E.2d 350, 359 (2021).

Thus, the circuit court correctly observed that Petitioner's complaint was a claim for

4

medical negligence, not the distinct cause of action for deliberate indifference. Claims for medical negligence must comply with the pre-suit notice requirements of the MPLA, and because Petitioner did not comply with those requirements, the circuit court appropriately dismissed the claim for lack of subject-matter jurisdiction in accordance with this Court's holding in *Faircloth*, 242 W. Va. 335, 835 S.E.2d 579.

This distinction is clear when we look closely at the basic elements of an MPLA claim and compare them to a deliberate indifference claim. The MPLA defines "health care" as:

> (1) *Any act, service or treatment* provided under, pursuant to or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment;
>
> (2) *Any act, service or treatment performed or furnished, or which should have been performed or furnished, by any health care provider* or person supervised by or acting under the direction of a health care provider or licensed professional for, *to or on behalf of a patient during the patient's medical care, treatment or confinement, including, but not limited to, staffing, medical transport,* custodial care or basic care, infection control, positioning, hydration, nutrition and similar patient services; . . .

W. Va. Code § 55-7B-2 (e)(1)-(2) (emphasis added). Moreover, "medical professional liability" is defined as:

> [A]ny liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

*Id.* § 55-7B-2(i). In this regard, this Court held in syllabus point four of *Gray* that "the West Virginia Legislature's definition of medical professional liability, found in West Virginia Code § 55-7B-2(i) (2003) (Supp.2005), includes liability for damages resulting from the death or injury of a person for any tort based upon health care services rendered or which should have been rendered. . . ." Syl. Pt. 4, *Gray,* 218 W. Va. at 566, 625 S.E.2d at 328, in part. Finally, West Virginia Code § 55-7B-3 provides, in pertinent part, that

> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
>
> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent

health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and

(2) Such failure was a proximate cause of the injury or death.

*Id*.; *see* Syl. Pt. 5, *Scott*, 246 W. Va. 184, 866 S.E.2d 350, in part ("'Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of "health care" as defined by W. Va. Code § 55-7B-2(e) (2006) (Supp. 2007), the Act applies regardless of how the claims have been pled.' Syllabus point 4, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007).")

In contrast, a deliberate indifference claim is distinctly different from a medical negligence claim. A deliberate indifference claim flows from the Eighth Amendment's prohibition against cruel and unusual punishment. The United States Supreme Court has discussed the basis of an Eighth Amendment claim, holding:

> The Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ," *Jackson v. Bishop*, 404 F.2d 571, 579 (C.A.8 1968), against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, *supra*, at 101, 78 S.Ct. at 598; *see also* Gregg v. Georgia, supra, at 172-173, 96 S.Ct. at 2925 (joint opinion); *Weems v. United States*, *supra*, 217 U.S. at 378, 30 S.Ct. at 553, or which "involve the unnecessary and wanton infliction of pain," *Gregg v. Georgia*, *supra*, at 173, 96 S.Ct. at 2925 (joint opinion); *see also Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947); *Wilkerson v. Utah*, *supra*, 99 U.S. at 136.

*Estelle v. Gamble*, 429 U.S. 97, 102-3 (1976). In *Estelle*, Mr. Gamble, who was incarcerated, requested medical treatment for "chest pains" over a period of four days. *Id.* at 101. After multiple refusals, he was finally taken to the prison doctor, who diagnosed him with an irregular heartbeat requiring hospitalization. *Id.* After he was returned to prison, Mr. Gamble again complained of "chest pains" and was not taken to the doctor for two days. *Id.* Based on these facts, the Supreme Court found that:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the

victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id*. at 105-06.

We have recognized claims for deliberate indifference, finding that: "[d]eliberate indifference to the serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain which is proscribed by the prohibition on cruel and unusual punishment in the Federal and State Constitutions." Syl. Pt. 4, *Nobles v. Duncil*, 202 W. Va. 523, 505 S.E.2d 442 (1998).

While such claims have been recognized by this Court, Petitioner's complaint simply fails to allege facts giving rise to such a claim. From Petitioner's amended complaint it is evident that he did, in fact, receive medical treatment. He was taken to the medical unit in the regional jail and found to have sustained a broken jaw and was subsequently seen by a specialist twenty-six days later. Such delay, in and of itself, does not constitute deliberate indifference. Indeed, we have affirmed that "mere disagreement with the prescribed course of treatment" is insufficient to justify the relief requested by Petitioner. *Massey v. Mirandy*, No. 16-0784, 2017 WL 3643014, at *1 (W. Va. Aug. 25, 2017) (memorandum decision).

Federal Courts have addressed this issue. The United States District Court for the Middle District of North Carolina stated:

> Significantly, an "error of judgment" on the part of prison medical staff, or "inadvertent failure to provide adequate medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983." *Boyce v. Alizaduh,* 595 F.2d 948, 953 (4th Cir.1979), *abrogated on other grounds by Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Mere negligence or medical malpractice is not sufficient to establish deliberate indifference. *See West v. Atkins,* 487 U.S. 42, 49 n. 8, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Rather, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement [or] supplying medical needs." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

*Wynn v. Mundo*, 367 F. Supp. 2d 832, 837 (M.D.N.C.), *aff'd,* 142 F. App'x 193 (4th Cir. 2005) (internal footnote omitted). Other courts have reached similar conclusions:

7

> "[A] delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that the treatment is unreliable, or that the cure is as risky or painful or bad as the malady" does not amount to deliberate indifference. *Harrison v. Barkley,* 219 F.3d 132, 139 (2d Cir.2000).

*Madera v. Ezekwe*, No. 10 CV 4459 (RJD) (LB), 2013 WL 6231799, at *11 (E.D.N.Y. Dec. 2, 2013).

Similarly, the Second Circuit Court of Appeals found:

> We agree that the mere malpractice of medicine in prison does not amount to an Eighth Amendment violation. *See Estelle,* 429 U.S. at 107, 97 S.Ct. 285; *Hathaway,* 37 F.3d at 66. This principle may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady. *See, e.g., Estelle,* 429 U.S. at 105-106, 97 S.Ct. 285 (holding that "inadvertent failure to provide adequate medical care" or "negligen[ce] in diagnosing or treating a medical condition" does not constitute deliberate indifference on the part of prison officials).

*Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000).

In this case, Petitioner repeatedly alleges in his amended complaint that Respondent was "responsible for facilitating transportation of inmates for medical care where needed," "fail[ed] to obtain medical care for [Petitioner] [which] was an ongoing and continuous act," and "failed to obtain timely medical care for [Petitioner]." Such allegations clearly set forth a claim of medical negligence rather than a case of deliberate indifference. In examining the complaint as a whole, the crux of its allegations assert a claim of medical negligence based primarily on the alleged failure to transport Petitioner to visit a medical specialist. These types of allegations fall squarely within the confines of the MPLA. *See* W. Va. Code §§ 55-7B-2 to -3.[3]

---

[3] Indeed, obtaining an appointment to see a medical specialist is a herculean task for the average person and the logistical issues and resulting delays that must be addressed to transport a prisoner to a specialist appointment outside the secure confines of the jail do not rise to deliberate indifference. In *Madera*, the United States District Court for the Eastern District of New York cited various examples where courts have "refused to find deliberate indifference where delays in treatment were caused by circumstances that were outside the control of the charged officials." *Madera* 2013 WL 6231799, at *12. Specifically, the *Madera* court found:

What Petitioner pled was a claim for the negligent failure to provide medical care. He chose to not pursue his claim as a straight-forward medical negligence case. The circuit court accurately described the Petitioner's deliberate indifference claim as an attempt to "hide behind the guise of a constitutional claim." As the circuit court also correctly concluded, Petitioner's claims "stem solely from the rendering, or alleged failure to render, 'health care' and therefore sound in terms of medical negligence." *See* Syl. Pt 4, *Ethicon*, 221 W. Va. at 702, 656 S.E.2d at 453. We agree with the circuit court that the allegations, as pled, make out a claim for medical negligence, not deliberate indifference. Because determination of the character of a claim sounding in medical negligence cases must be determined at the outset of a case to resolve issues of subject matter jurisdiction pursuant to this Court's holding in *Faircloth*, and Petitioner did not comply with the pre-suit notice requirements even after additional opportunity to do so, the circuit court appropriately dismissed the claim for lack of subject-matter jurisdiction.

Affirmed.

**ISSUED:** June 9, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

---

The logistical difficulties involved in scheduling outpatient appointments and transporting prisoners to outside facilities can present one such circumstance. *See, e.g., Matos v. Gomprecht,* 2012 WL 1565615, at *8 (E.D.N.Y. Feb.14, 2012) (Orenstein, M.J.), *adopted by the District Court at* 2012 WL 1565523 (E.D.N.Y. May 2, 2012) (Garaufis, J.); *Henderson v. Sommer,* 2011 WL 1346818, at *4 (S.D.N.Y. Apr.1, 2011) (Berman, J.); *Alvarez,* 2010 WL 1965892, at *2–4, *10–11. So too can the denial of recommended procedures by an outside review board. *See Matos,* 2012 WL 1565615, at *9; *cf. St. John v. Arnista,* 2007 WL 3355385, *4, 7 (D.Conn. Nov.9, 2007) (Eginton, J.). Intervening medical problems can also justify delays in treatment. *See Pizarro v. Gomprecht,* 2013 WL 990998, at *14 (E.D.N.Y. Feb.13, 2013) (Bloom, M.J.), *adopted by the District Court at* 2013 WL 990997 (E.D.N.Y. Mar.13, 2013) (Matsumoto, J.); *Alvarez,* 2010 WL 1965892, at *4, *10–11.

*Madera* 2013 WL 6231799, at *12.