758 S.E.2d 501

Sarah DAWKINS, Appellant,

v.

UNION HOSPITAL DISTRICT (a.k.a. Wallace Thomson Hospital), Respondent.

Appellate Case No.2012–211938.

No. 27380.

Supreme Court of South Carolina.

Heard Jan. 22, 2014.

Decided April 9, 2014.

Rehearing Denied June 11, 2014.

John S. Nichols, of Bluestein Nichols Thompson & Delgado, LLC, and Donald Gist, of Gist Law Firm, P.A., both of Columbia, for appellant.

William U. Gunn and Joshua Tate Thompson, both of Holcombe Bomar, P.A., of Spartanburg, for respondent.

Chief Justice TOAL.

Sarah Dawkins (Appellant) appeals the trial court's decision granting Union Hospital District d/b/a Wallace Thomson Hospital's (the Hospital) motion to dismiss with prejudice and

finding that Appellant was required to comply with the statutory requirements for filing a medical malpractice claim, specifically the Notice of Intent (NOI) and expert affidavit requirements. We reverse.

## FACTS/PROCEDURAL BACKGROUND

On February 22, 2009, Appellant began experiencing headaches and became unable to maintain her balance. Appellant's daughter believed Appellant was having a stroke and called an ambulance, which drove Appellant to the Hospital. Appellant's daughter informed the Hospital staff of Appellant's symptoms, including the instability and possible symptoms of a stroke. The Hospital admitted Appellant to the emergency room, but left her unattended and unmonitored. Further, the Hospital prevented Appellant's family members from accompanying her into the emergency room area. At some point after being admitted but prior to receiving treatment, Appellant attempted to use the restroom and fell, fracturing her right foot.

Appellant filed a complaint against the Hospital on February 18, 2011, and an amended complaint on May 9, 2011, alleging in both that she would not have suffered her injuries "had the [Hospital's] staff performed their duties in compliance with the Hospital Policies." She specifically claimed that the Hospital was negligent in "failing to keep a watchful eye on a person who had originally complained of dizziness, headaches and instability, which were the precursors of her admittance" and in "failing to take any precautionary actions, by any means, to insure [Appellant's] safety."

The Hospital moved to dismiss Appellant's complaint under Rule 12(b)(6), SCRCP. In support of its motion, the Hospital asserted that Appellant's claim alleged "medical malpractice," as defined by S.C.Code Ann. § 15–79–110(6) (Supp.2012); further, it argued that "[p]atient assessments, fall risk precautions based on those assessments, and ensuring patient safety based on knowledge of medications and their side effects are all aspects of skilled and technical medical treatment rising above the knowledge of laypersons." Accordingly, because the

Hospital viewed Appellant's claim as one sounding in medical malpractice, it argued that Appellant was required to comply with the NOI and expert affidavit requirements found in section 15–79–125.[1] *See* S.C.Code Ann. § 15–79–125(A) (Supp. 2012).

The trial court granted the Hospital's motion to dismiss, holding that Appellant's claim fell within the broad definition of "medical malpractice" found in section 15–79–110(6) and that:

> Any obligation or duty owed to [Appellant] as a result of [Appellant's] initial medical complaints and the disclosure of her current medications to the intake nurses could arise only from a professional medical analysis or diagnosis. It is axiomatic that any such medical analysis or diagnosis would constitute the practice of medicine.

The trial court therefore found that Appellant's claim triggered the NOI and expert affidavit requirements found in section 15–79–125. Because Appellant did not comply with those requirements, the trial court dismissed her action.

Appellant moved for reconsideration, claiming that, *inter alia,* her claim was a negligence claim based on premises liability, and that she was a business invitee to the Hospital. However, the trial court denied Appellant's motion, stating:

> The premise of [Appellant's] allegations is based on an event that happened in a medical facility due to a medical condition. Any duty in this case arose from the fact that [Appellant] was seeking medical treatment at a medical facility. Had the events alleged to have occurred at the hospital taken place at a restaurant, grocery store, or any other place of business, none would be liable based on the allegations in the amended complaint. Therefore, this is not a premises liability case, as there is no allegation that any dangerous conditions at the hospital caused [Appellant] to fall.

---

1. Appellant does not dispute that she failed to comply with the requirements of section 15–79–125; rather, she contends that her claim does not involve "medical malpractice," and, as such, the requirements in section 15–79–125 do not apply to her claim.

Appellant appealed, and this Court certified the appeal from the court of appeals pursuant to Rule 204(b), SCACR.

## ISSUE

Whether Appellant's cause of action sounds in medical malpractice or ordinary negligence?

## STANDARD OF REVIEW

On appeal from a dismissal pursuant to Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the trial court—whether the defendant demonstrates the plaintiff has failed to state facts sufficient to constitute a cause of action in the pleadings filed with the court. *Grimsley v. S.C. Law Enforcement Div.*, 396 S.C. 276, 281, 721 S.E.2d 423, 426 (2012); *Flateau v. Harrelson*, 355 S.C. 197, 201–03, 584 S.E.2d 413, 415–16 (Ct.App.2003). The Court is required to view the allegations in the complaint in the light most favorable to the plaintiff and determine whether the facts alleged and the inferences reasonably deducible from the pleadings would entitle the plaintiff to relief under any theory of the case. *Grimsley*, 396 S.C. at 281, 721 S.E.2d at 426. The Court may sustain the dismissal when "the facts alleged in the complaint do not support relief under any theory of law." *Flateau*, 355 S.C. at 202, 584 S.E.2d at 416.

## ANALYSIS

We begin our analysis by acknowledging that "[b]ecause medical malpractice is a category of negligence, the distinction between medical malpractice and negligence claims is subtle; there is no rigid analytical line separating the two causes of action." *Estate of French v. Stratford House*, 333 S.W.3d 546, 555 (Tenn.2011). Rather, differentiating between the two types of claims "depends heavily on the facts of each individual case." *Id.* at 556.

In medical malpractice actions, expert testimony is required to establish both the duty owed to the patient and the breach of that duty, unless the subject matter of the claim falls within a layman's common knowledge or experience.

*Linog v. Yampolsky*, 376 S.C. 182, 187, 656 S.E.2d 355, 358 (2008) (citing *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 248, 626 S.E.2d 1, 4 (2006)); *Bonaparte v. Floyd*, 291 S.C. 427, 434, 354 S.E.2d 40, 45 (Ct.App.1987). Because medical knowledge is generally outside of a juror's common knowledge, the requisite expert testimony assists the jury in making a more accurate determination of fault regarding whether a physician's negligence in rendering medical care proximately caused the patient's injury.

■ However, not every injury sustained by a patient in a hospital results from medical malpractice or requires expert testimony to establish the claim. *Accord Blom v. Adventist Health Sys./Sunbelt, Inc.*, 911 So.2d 211, 214 (Fla.Dist.Ct.App. 2005); *Kolanowski v. Ill. Valley Cmty. Hosp.*, 188 Ill.App.3d 821, 136 Ill.Dec. 135, 544 N.E.2d 821, 823 (1989). For example, claims against a hospital for injuries caused by falling ceiling tiles or improperly maintained hallways or parking lots sound in ordinary negligence, and specifically in premises liability. *See, e.g., Hughes v. Children's Clinic, P.A.*, 269 S.C. 389, 237 S.E.2d 753 (1977); *see also, e.g., Feifer v. Galen of Fla., Inc.*, 685 So.2d 882 (Fla.Dist.Ct.App.1996). The plaintiff in ordinary negligence cases does not need to produce expert testimony to establish his claim because the jurors can easily understand and evaluate the relevant facts and law merely by exercising their common knowledge.

■ Thus, many states' courts distinguish between medical malpractice and ordinary negligence actions by determining whether expert testimony is necessary to aid the jury's determination of fault, particularly with respect to the "duty" and "causation" elements of the claim. In general, if the patient receives allegedly negligent professional medical care, then expert testimony as to the standard of that type of care is necessary, and the action sounds in medical malpractice. *Kujawski v. Arbor View Health Care Ctr.*, 139 Wis.2d 455, 407 N.W.2d 249, 252 (1987) (quoting *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis.2d 147, 172 N.W.2d 427, 428 (1969)). However, if the patient instead receives "nonmedical, administrative, ministerial, or routine care," expert testimony estab-

lishing the standard of care is not required, and the action instead sounds in ordinary negligence. *Id.; accord Kastler v. Iowa Methodist Hosp.*, 193 N.W.2d 98, 101 (Iowa 1971); *Bryant v. Oakpointe Villa Nursing Ctr., Inc.*, 471 Mich. 411, 684 N.W.2d 864, 871 (2004); *Estate of French*, 333 S.W.3d at 556 n. 9, 557 n. 10, 559–60 (collecting cases).

 Thus, we emphasize that not every action taken by a medical professional in a hospital or doctor's office necessarily implicates medical malpractice and, consequently, the requirements of section 15–79–125. While providing medical services to a patient, the medical professional acts in his professional capacity and must meet the professional standard of care, as established by expert testimony. However, at all times, the medical professional must "exercise ordinary and reasonable care to insure that no unnecessary harm [befalls] the patient." *Papa v. Brunswick Gen. Hosp.*, 132 A.D.2d 601, 517 N.Y.S.2d 762, 763–64 (1987). The statutory definition of medical malpractice found in section 15–79–110(6) does not impact medical providers' ordinary obligation to reasonably care for patients with respect to nonmedical, administrative, ministerial, or routine care. Thus, medical providers are still subject to claims sounding in ordinary negligence.[2]

Here, we find that Appellant's claim sounds in ordinary negligence and is not subject to the statutory requirements associated with a medical malpractice claim. Appellant's complaint makes clear that she had not begun receiving medical care at the time of her injury, nor does it allege the Hospital's employees negligently administered medical care. Rather, the

---

**2.** *See, e.g., Lakeland Reg'l Med. Ctr., Inc. v. Allen*, 944 So.2d 541 (Fla.Dist.Ct.App.2006) (finding that a patient's claim against a hospital sounded in ordinary negligence when the hospital served the patient a turkey sandwich infected with salmonella); *Estate of Swift v. Ne. Hosp. of Phila.*, 456 Pa.Super. 330, 690 A.2d 719 (1997) (finding that a patient's slip-and-fall claim against a hospital sounded in ordinary negligence when the patient slipped in a puddle of water in the hospital restroom); *cf. Graham v. Whitaker*, 282 S.C. 393, 321 S.E.2d 40 (1984) (involving a premises liability case brought by an ophthalmologist's patient who was given eye drops and left unsupervised in the waiting room, where she subsequently attempted to stand and instead fell and injured herself).

complaint states that Appellant's injury occurred when she attempted to use the restroom unsupervised, prior to receiving medical care. *Cf. Kastler*, 193 N.W.2d at 101–02 (finding that claims brought by an epileptic patient who fell in the shower while unattended during a hospital stay involved routine care, not medical care, and thus sounded in ordinary negligence); *Landes v. Women's Christian Ass'n*, 504 N.W.2d 139, 141 (Iowa Ct.App.1993) (finding claims brought by patient who had just undergone knee surgery and who fell while unattended in the restroom sounded in ordinary negligence because they involved routine, nonmedical care).[3] Accordingly, the circuit court improperly classified Appellant's claim as one sounding in medical malpractice, and its dismissal of her action for failing to comply with the medical malpractice pre-filing requirements found in section 15–79–125 was in error.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is reversed and remanded for further action consistent with this opinion.

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.

---

3. Likewise, once the Hospital admitted Appellant, it was on notice that she was in a vulnerable physical state and undertook a duty to reasonably care for her. *Cf. Kelly v. Bridgeport Health Care Ctr., Inc.*, No. FBTCV106007389S, 2010 WL 3788059, at * 1, *5 (Conn.Super.Ct. Sept. 2, 2010) (finding that a claim involved ordinary negligence when a dementia patient with a history of attempting to leave a nursing home facility sued the nursing home for failing to adequately supervise him after he left the facility and fell down the front steps in his wheelchair). Moreover, it prevented her family members from accompanying her to the emergency room area, thus likewise preventing them from assisting her. *Cf. Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991) (finding a plaintiff stated a claim for negligence where "police officers took control of the situation and preempted individuals already attempting to aid the [ ] obviously injured and intoxicated decedent" because the officers undertook a duty to act and use due care).