IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 15-1148

_____

FILED
February 9, 2017
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JOYCE E. MINNICH, as Executrix of the Estate of Andrew A. Minnich,
and JOYCE E. MINNICH, individually,
Plaintiff Below, Petitioner

v.

MEDEXPRESS URGENT CARE, INC. - WEST VIRGINIA d/b/a
MEDEXPRESS URGENT CARE - SOUTH CHARLESTON,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
Honorable Charles E. King
Civil Action No. 13-C-1547

AFFIRMED

_____

Submitted: January 10, 2017
Filed: February 9, 2017

John H. Tinney, Jr., Esq.                 Anthony C. Sunseri, Esq.
John K. Cecil, Esq.                       Darla A. Mushet, Esq.
Hendrickson & Long, PLLC                  Burns White LLC
Charleston, West Virginia                 Wheeling, West Virginia
Counsel for Petitioner                    Counsel for Respondents

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

SYLLABUS

1. "Pursuant to W.Va. Code § 55-7B-2(e) (2006) (Supp. 2007), 'health care' is defined as 'any act or treatment performed or furnished, or which should have performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment or confinement.'" Syl. Pt. 5, *Blankenship v. Ethicon, Inc.,* 221 W.Va. 700, 656 S.E.2d 451 (2007).

2. "The West Virginia Medical Professional Liability Act, codified at W.Va. Code § 55-7B-1 *et seq.* applies only to claims resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It does not apply to other claims that may be contemporaneous to or related to the alleged act of medical professional liability." Syl. Pt. 3, *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 216 W.Va. 656, 609 S.E.2d 917 (2004).

3. "The failure to plead a claim as governed by the Medical Professional Liability Act, W.Va. Code § 55-7B-1, *et seq.*, does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W.Va. Code § 55-7B-2(e) (2006) (Supp. 2007), the Act applies regardless of how the claims have been pled." Syl. Pt. 4, *Blankenship v. Ethicon, Inc.,* 221 W.Va. 700, 656 S.E.2d 451 (2007).

LOUGHRY, Chief Justice:

The petitioner, Joyce Minnich,[1] appeals from the October 28, 2015, order of the Circuit Court of Kanawha County, denying her motion for reconsideration of an adverse summary judgment ruling issued by the circuit court on December 1, 2014. Rather than granting summary judgment as to the entirety of the petitioner's negligence claim, the circuit court simply concluded that the purported "premises liability" claim[2] asserted by the petitioner against the respondent, Medexpress Urgent Care, Inc. ("MedExpress"), falls within the provisions of the West Virginia Medical Professional Liability Act ("MPLA"), W.Va. Code § 55-7B-1 to -12 (2016).[3] In seeking relief from this ruling, the petitioner argued that the MPLA does not apply because Mr. Minnich was not treated by a "health care provider"[4] prior to his fall within the MedExpress facility. Given Mr. Minnich's lack of medical care before the fall, the petitioner asserts that the subject claim is not a medical malpractice claim but instead a negligence claim which stems from the respondent's failure to maintain a safe

---

[1]Mrs. Minnich brings this suit as both the personal representative of her deceased husband and in her individual capacity.

[2]The petitioner also brought a loss of consortium claim and a claim for damages under the wrongful death statute.

[3]The trial court, through its summary judgment ruling, granted the petitioner a reasonable period of time to amend her complaint to comply with the pre-suit filing requirements of the MPLA. *See* W.Va. Code § 55-7B-6 (2016).

[4]*See* W.Va. Code § 55-7B-2(g) (2008). The applicable version of the MPLA is contained in the 2006 codification of the West Virginia Code.

1

environment.[5]  Upon our examination of these contentions, we conclude that a "health care provider," as defined by the MPLA, did in fact provide "health care"[6] related services to Mr. Minnich prior to his fall.  Accordingly, we affirm the trial court's determination with regard to the applicability of the MPLA.

## I.  Factual and Procedural Background

On January 25, 2013, Mr. Minnich, accompanied by his wife, presented at the South Charleston MedExpress.  Mr. Minnich visited MedExpress to seek medical care pertinent to his complaints of shortness of breath, weakness, and the possible development of pneumonia.  Ms. Jessica Hively, a medical assistant[7] employed by MedExpress, spoke to the Minnichs to evaluate Mr. Minnich's condition in the triage area of the MedExpress facility.  According to the petitioner, Ms. Hively was informed about Mr. Minnich's recent hip surgery and the fact that he had only recently begun to ambulate without the assistance of a walker.

---

[5]The petitioner relies upon the respondent's exposure of Mr. Minnich to allegedly unsafe equipment–specifically, the partially extended footstool used by the decedent in his attempt to access the examination table.

[6]*See* W.Va. Code § 55-7B-2(e) (2008) (defining "health care").

[7]Though the trial court refers to Ms. Hively as a "certified" medical assistant, this state does not license or regulate medical assistants.  Because the "certification" reference pertains only to the completion of academic course work, we do not place any significance on that term for purposes of determining whether Ms. Hively was a "health care provider" under the MPLA.

After escorting the Minnichs to an examination room, Ms. Hively purportedly directed Mr. Minnich to be seated on the examination table. Ms. Hively exited the room, whereupon Mr. Minnich attempted to get onto the table using a retractable step connected to the table. During his attempt to access the examination table, Mr. Minnich fell back into Mrs. Minnich. As a result, the Minnichs both fell to the floor and sustained injuries.[8] Mr. Minnich died ninety days later.[9]

On August 14, 2013, Mrs. Minnich filed a complaint against the respondent in which she asserted three causes of action: negligence based on premises liability; loss of consortium; and wrongful death. On March 7, 2014, a default judgment was entered against MedExpress, which was later set aside over the petitioner's objection. Through its answer and affirmative defenses filed on September 8, 2014, MedExpress asserted that this action arose under the MPLA. On October 24, 2014, the respondent again sought to invoke the MPLA in its motion for summary judgment. By order entered on December 1, 2014, the circuit court granted MedExpress summary judgment as to the premises liability claim,

---

[8]The MedExpress staff dressed and treated a skin tear on Mr. Minnich's left forearm, wrist, and hand. The petitioner alleges that, as a result of the fall, Mr. Minnich suffered a subarachnoid hematoma (brain bleed) and a laceration of his forearm, while she sustained a periorbital hematoma and a knot on the back of her head.

[9]The petitioner asserts that the brain bleed Mr. Minnich suffered as a result of the fall substantially contributed to his physical demise and ultimately to his death.

3

directing the petitioner to amend her complaint to plead a medical malpractice claim compliant with the MPLA filing requirements.[10]

Following this Court's refusal to issue a rule to show cause in response to the petitioner's request for a writ of prohibition,[11] Mrs. Minnich filed a motion seeking reconsideration of the circuit court's summary judgment ruling. By ruling entered on October 28, 2015, the circuit court denied the request for reconsideration and affirmed its previous grant of summary judgment with regard to the premises liability claim. The circuit court further ruled that its October 28, 2015, order was a final judgment with regard to the premises liability claim which was subject to immediate appeal pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure. It is from this ruling that the petitioner now appeals.

## II.  Standard of Review

Our review of this matter is plenary as we set forth in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). Because we must decide whether the trial court

---

[10]The circuit court viewed the originally-pled "premises liability" claim and the claim for professional negligence under the MPLA as two separate claims and therefore viewed his ruling regarding the applicability of the MPLA as requiring outright dismissal of the premises liability claim, rather than simple amendment of the claim to be MPLA compliant. Accordingly, the circuit court entered summary judgment on the premises liability claim.

[11]The petition was refused by this Court on March 11, 2015.

4

was correct in applying the MPLA to this matter, our review is further guided by this Court's recognition in syllabus point one of *Chrystal R.M. v. Charles A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." With these standards in mind, we proceed to determine whether the circuit court committed error.

## III. Discussion

At the center of this case is the question of whether the services received by Mr. Minnich prior to his fall constitute "health care" within the meaning of the MPLA. The petitioner argues that Mr. Minnich did not receive any medical care prior to his fall sufficient to invoke the provisions of the MPLA. Conversely, MedExpress argues that the MPLA is applicable because the petitioner has expressly averred that MedExpress failed to exercise proper clinical judgment after evaluating Mr. Minnich in connection with the health care services he expressly sought from MedExpress.

To support her contention that Mr. Minnich never received medical services before the injury-causing fall, the petitioner posits that Ms. Hively–the MedExpress medical assistant–does not qualify as a "health care provider" under the MPLA. As a result, the confabulation with Ms. Hively cannot constitute "health care"–a predicate necessary to bring

5

this case within the parameters of the MPLA.  The definition of "health care" provided by the MPLA specifically refers to acts or treatment either actually performed or which should have been performed by a "health care provider."  *See* W.Va. Code § 55-7B-2(e) (2006). As we held in syllabus point five of *Blankenship v. Ethicon, Inc.,* 221 W.Va. 700, 656 S.E.2d 451 (2007):

> Pursuant to W.Va. Code § 55-7B-2(e) (2006) (Supp. 2007), "health care" is defined as "any act or treatment performed or furnished, or which should have performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment or confinement."

The pertinent definition of "health care provider"[12] under the MPLA is:

> a person, partnership, corporation, professional limited liability company, *health care facility* or institution licensed by, or certified in, this State or another state, to provide health care or professional health care services, including, but not limited to, a physician, osteopathic physician, hospital, dentist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, psychologist, emergency medical services authority or agency, *or an officer, employee, or agent thereof acting in the course and scope of such officer's, employee's or agent's employment.*

W.Va. Code § 55-7B-2(g) (2008) (emphasis supplied).

---

[12]As part of the legislative amendments to the MPLA in 2015, the definition of a "health care provider" was expanded to include additional entities such as a speech-language pathologist; audiologist, occupational therapist, pharmacist, technician, certified nursing assistant; the scope of such providers was also broadened to include "any person supervised by or acting under the direction of a licensed professional, any person taking actions or providing service or treatment pursuant to or in furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis or treatment."  However, as noted above, those definitions do not apply to this case.  *See supra* note 4.

In trying to convince this Court that Ms. Hively–a medical assistant who is not subject to licensure–does not come within the list of entities specifically demarcated as a "health care provider," the petitioner overlooks the legislative decision to include *employees* of any of the statutorily-delineated entities within the definition of a "health care provider." Because the status of MedExpress as a health care facility[13] is not disputed, Ms. Hively, as respondent's employee, qualifies as a "health care provider" for purposes of the MPLA.[14]

Given that Ms. Hively is a "health care provider" under the MPLA, we must proceed to determine whether the discourse between Ms. Hively and Mr. Minnich comes within the ambit of "health care" for purposes of the MPLA. As we held in syllabus point three of *Boggs v. Camden-Clark Memorial Hospital Corp.*, 216 W.Va. 656, 609 S.E.2d 917 (2004):

> The West Virginia Medical Professional Liability Act, codified at W.Va. Code § 55-7B-1 *et seq.* applies only to claims resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or

---

[13]*See* W.Va. Code § 55-7B-2(f) (2008).

[14]To qualify under the subject definition of a "health care provider," Ms. Hively had to be acting in the course and scope of her employment. *See* W.Va. Code § 55-7B-2(g). The health care services nature of her position at MedExpress, rather than just the fact of her employment, is what brings Ms. Hively within the definition of "health care provider." *See Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 216 W.Va. 656, 662-63, 609 S.E.2d 917, 923-24 (2004) ("The Legislature has granted special protection to medical professionals, while they are acting as such.).

7

which should have been rendered, by a health care provider or health care facility to a patient. It does not apply to other claims that may be contemporaneous to or related to the alleged act of medical professional liability.

The petitioner contends that the services Mr. Minnich received from Ms. Hively preceding his fall do not qualify as "health care." In addition, she asserts that her failure to bring suit against any individual provider of health care services is proof that her action does not sound in medical malpractice.

We quickly dispense with the petitioner's attempt to rely on her decision to file what she characterized as a "premises liability" claim and not a medical malpractice claim. As we explained in syllabus point four of *Ethicon*:

> The failure to plead a claim as governed by the Medical Professional Liability Act, W.Va. Code § 55-7B-1, *et seq.*, does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of "health care" as defined by W.Va. Code § 55-7B-2(e) (2006) (Supp. 2007), the Act applies regardless of how the claims have been pled.

221 W.Va. at 702, 656 S.E.2d at 453; *accord Shirley v. Hosp. Auth. of Valdosta/Lowndes Cty.*, 587 S.E.2d 873, 874-75 (Ga. App. 2003), *overruled on other grounds as stated in Chandler v. Opensided MRI of Atlanta, LLC*, 682 S.E.2d 165 (Ga. App. 2009) (recognizing that plaintiffs' characterization of claim as professional or ordinary negligence is not controlling). As *Ethicon* makes clear, a plaintiff cannot avoid the MPLA by virtue of failing to expressly allege a malpractice claim. If a claim falls squarely under the MPLA, the

8

manner in which a complaint is drafted will not prevent the invocation of the MPLA. *See, e.g., Ethicon*, 221 W.Va. at 707, 656 S.E.2d at 458 (approving circuit court's analysis that plaintiffs' labeling "as 'products' claims does not change the fundamental [MPLA] basis of this tort action"); *Gray v. Mena*, 218 W.Va. 564, 570, 625 S.E.2d 326, 332 (2005) (permitting plaintiff who opted not to bring MPLA action opportunity to amend complaint and comply with MPLA requirements rather than upholding dismissal for non-compliance with MPLA filing requirements). As we stressed in *Ethicon*, "the determination of whether a cause of action falls within the MPLA is based upon the factual circumstances giving rise to the cause of action, *not the type of claim asserted.*" 221 W.Va. at 702-03, 656 S.E.2d at 453-54 (emphasis supplied).

Turning to the crux of this case, we address the ultimate issue of whether the fall sustained by Mr. Minnich occurred in the course of his receipt of health care services at MedExpress. The petitioner urges that the fall did not occur during receipt of health care services inasmuch as Mr. Minnich experienced the fall prior to his receipt of any health care services. While the petitioner would have us believe that the fact that a licensed health professional, such as a nurse or doctor, had not yet undertaken a physical examination of Mr. Minnich controls whether this case falls under the MPLA, we are not persuaded. Integral to the diagnosis and examination of a patient by a medical professional is the component of the health care visit that customarily precedes the actual physical examination. Absent the

intake aspect of a patient's visit to a health care provider, the examination would not be as properly focused or as likely to result in a correct diagnosis. Consequently, we have little difficulty viewing the questioning by Ms. Hively of the Minnichs and the taking of vital signs that occurred prior to the fall as transpiring during the course of or "within the context of the rendering of medical services." *Gray*, 218 W.Va. at 570, 625 S.E.2d at 332. The petitioner's attempt to exclude any injuries sustained by a patient before a doctor or nurse enters the examination room, but after a medical history and intake have been taken, from the reach of the MPLA is unavailing.[15]

The critical inquiry is whether the subject conduct that forms the basis of the lawsuit is conduct related to the provision of medical care. *See Ethicon*, 221 W.Va. at 707, 656 S.E.2d at 458 (discussing this Court's recognition in *Boggs* and *Gray* of actions falling outside MPLA's scope as "conduct that is unrelated to providing medical care"); *see also Manor Care, Inc. v. Douglas*, 234 W.Va. 57, 75, 763 S.E.2d 73, 91 (2014) (concluding that negligence-based claims predicated on corporate budgeting and staffing decisions do not fall

---

[15]To be clear, this is not a case where a patient is injured independent of any provision of health care services, such as an incident that might occur in the waiting area of the facility independent of any interaction with a "health care provider." *See, e.g., Dawkins v. Union Hosp. Dist.*, 758 S.E.2d 501, 504-05 (S.C. 2014) (holding that injury sustained from fall in hospital's waiting area restroom before receipt of medical care was not subject to medical malpractice filing requirements); *see also Pitt-Hart, MD v. Sanford USD Med. Ctr.*, 878 N.W.2d 406, 412 (S.D. 2016) (contrasting nonpatient slipping on icy sidewalk outside hospital's premises with dropping of post-operative knee replacement patient by healthcare technician).

10

under the MPLA).  We simply cannot accept the petitioner's attempt to frame the injuries Mr. Minnich sustained in this case as being unrelated to the provision of health care services.

As support for this conclusion, we rely upon the following allegation set forth in the complaint:  "Despite the fact that the  employee was instructed that Mr. Minnich was feeling weak and had just stopped using a walker to get around because of hip surgery, the MedExpress South Charleston staff member did not assist Mr. Minnich onto the exam table or examine the table to make certain that it was in good working order."  From the record in this case, it is abundantly clear that Mr. Minnich was physically in the examination room at the time of the fall after having completed the necessary disclosure of his condition and concerns to a "health care provider."  This fall occurred while attempting to comply with the directive of that "health care provider" to sit on the examination table–a piece of medical equipment routinely used to examine a patient.  Thus, the injuries sustained by Mr. Minnich as a result of the fall were sustained in the course of his evaluation at MedExpress.  That evaluation, an essential aspect of Mr. Minnich's medical diagnosis and/or treatment which involved usage of the examination table as medical equipment, was necessarily part of the health care services MedExpress undertook to provide Mr. Minnich.

In pleading this case, the petitioner alleged that a MedExpress employee, after being informed of his medical history, failed to properly assist Mr. Minnich to gain access

11

to the examination table.  Through this allegation, the petitioner injected the issue of whether Ms. Hively, armed with the knowledge of Mr. Minnich's recent medical history, complied with the standard of care expected of a health care services provider.  Thus, the petitioner specifically raised the issue of Ms. Hively's  professional training and judgment by relying on the awareness MedExpress had regarding Mr. Minnich's weakened condition and his ambulatory restrictions.  In *Bardo v. Liss*, 614 S.E.2d 101 (Ga. App. 2015), the appellate court determined that allegations of the physician's failure to assist a patient as she stepped off the examination table was rooted in professional rather than ordinary negligence "because the degree of physical assistance needed by a patient to prevent a fall in light of the patient's medical condition required the exercise of expert medical judgment." *Id.* at 103-04. The court noted that "[w]here the professional's alleged negligence requires the exercise of professional skill and judgment to comply with a standard of conduct within the professional's area of expertise, the action states professional negligence." *Id.* at 103; *accord Holloway v. Northside Hosp*, 496 S.E.2d 510, 511 (Ga. App. 1998) (rejecting claim that allegations concerning nurses' failure to properly assist plaintiff to prevent fall sounded in ordinary negligence, based on conclusion that expert testimony was required to determine whether hospital employees' actions deviated from applicable standard of care).

Like this Court,[16] other courts have recognized that the occurrence of an injury or an action taken by a health care professional within or on the premises of a health care facility is not what determines the applicability of a state's medical malpractice schema. *See Dawkins v. Union Hosp. Dist.*, 758 S.E.2d 501, 504 (S.C. 2014) (stating that "not every action taken by a medical professional in a hospital or doctor's office necessarily implicates medical malpractice"); *see, e.g. Toledo v. Mercy Hosp. of Buffalo*, 994 N.Y.S.2d 298, 303–04 (N.Y. Sup. Ct. 2014) (holding that malpractice statute did not govern hospital patient's fall caused by slipping on urine while walking to restroom). As an additional basis for deciding whether an action falls subject to a state's medical malpractice laws, many states look to "whether expert testimony is necessary to aid the jury's determination of fault, particularly with respect to the 'duty' and 'causation' elements of the claim." *Dawkins*, 758 S.E.2d at 504; *see also Shirley*, 587 S.E.2d at 874-75 (discussing existence of "medical question" and application of medical judgments as indicia of whether expert testimony is required to address allegations of ordinary versus professional negligence). The petitioner addresses the issue of whether expert testimony is required in this case in an overly narrow fashion. Omitting the impact of Ms. Lively's knowledge of Mr. Minnich's weakened condition, she suggests that the precautions required to ensure that a footstool is fully

---

[16]*See Manor Care*, 234 W.Va. at 72, 763 S.E.2d at 88 (stating that *Boggs* stands for the proposition that some claims that may be brought against a health care provider simply do not involve health care services and, therefore, are not subject to the MPLA"); *Boggs,* 216 W.Va. at 662-63, 609 S.E.2d at 923-24 (discussing non-applicability of MPLA to claims of fraud, spoliation of evidence, and negligent hiring).

extended and "safe to use does not require specialized knowledge." But the issue of negligence, as pled in the complaint, links Ms. Lively's decision not to assist Mr. Minnich onto the examination table with her awareness of his condition and frailties.

Despite the petitioner's protestations to the contrary, she has pled her case in a manner that requires the introduction of expert evidence to address whether Mr. Minnich should have been permitted to climb onto the examination table unassisted. In framing her complaint, the petitioner expressly made an issue of Ms. Hively's clinical judgment in leaving Mr. Minnich to access the examination table with no supervision or assistance after being advised of his recent hip surgery, his current weakness, and his limited ambulatory status. We agree with the trial court's assessment that the petitioner has raised the issue of whether proper clinical judgment was exercised in the course of Mr. Minnich's health care evaluation. Absent expert witness' testimony, the jury will be unable to determine whether Ms. Hively breached the duty of care she owed as a "health care provider" to Mr. Minnich in connection with his receipt of health care at MedExpress. Accordingly, we find no error in the circuit court's decision that the MPLA applies to this case.

## IV. Conclusion

Based on the foregoing, the October 28, 2015, order of the Circuit Court of Kanawha County is affirmed, which expressly incorporates the specific directive set forth in the December 1, 2014, summary judgment ruling that the petitioner shall be granted a reasonable period of time to amend her complaint to assert a claim under the Medical Professional Liability Act.

Affirmed.

15