# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Amy Elizabeth Williams, as the Personal Representative of the Estate for deceased minor; and Amy Elizabeth Williams, individually, Plaintiffs,

v.

Quest Diagnostics, Inc., Athena Diagnostics, Inc., and ADI Holdings, Inc., Defendants.

Appellate Case No. 2017-000787

---

## CERTIFIED QUESTION

---

ON CERTIFICATION FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
Margaret B. Seymour, Senior United States District Judge

---

Opinion No. 27818
Heard February 14, 2018 – Filed June 27, 2018

---

## CERTIFIED QUESTION ANSWERED

---

Bradford W. Cranshaw, Trevor M. Hughey, G. Robert DeLoach, III, Matthew M. McGuire, and James Ervin, all of Columbia, for Plaintiffs.

John C. Moylan, III, and Alice W. Parham Casey, both of Columbia, and Wallace K. Lightsey and Wade S. Kolb, III, both of Greenville, for Defendants.

**JUSTICE KITTREDGE:**  This Court accepted the following certified question from the United States District Court for the District of South Carolina:

> Is a federally licensed genetic testing laboratory acting as a "licensed health care provider" as defined by S.C. Code Ann. § 38-79-410 when, at the request of a patient's treating physician, the laboratory performs genetic testing to detect an existing disease or disorder?

Answer:  Yes.

## I.

This wrongful death action arises from the death of a minor.  The deceased was a young child experiencing seizures; the treating physician sent the child's DNA[1] to Defendants' genetic testing laboratory for the purpose of diagnosing the child's disease or disorder.  It is alleged the genetic testing laboratory failed to properly determine the child's condition.  The child died, and this action followed.  Defendants assert that the genetic testing laboratory is a "licensed health care provider" pursuant to S.C. Code Ann. § 38-79-410 (2015).  Defendants further contend that Plaintiffs' claims concern medical malpractice, thereby rendering the medical malpractice statute of repose applicable.[2]  *See* S.C. Code Ann. § 15-3-545

---

[1] The common abbreviation for deoxyribonucleic acid.

[2] Plaintiffs expressed concern that the question before us may be premature and answering this certified question in the affirmative, as we do, may preclude other arguments in support of the case moving forward.  We recognize this concern, but we believe it has been satisfactorily addressed by Defendants' concession at oral argument that Plaintiffs' other arguments remain viable, unaffected by answering the certified question in the affirmative. *See Dawkins v. Union Hosp. Dist.*, 408 S.C. 171, 177–78, 758 S.E.2d 501, 504 (2014) (internal citations omitted) ("[N]ot every injury sustained by a patient in a hospital [or by a licensed health care provider] results from medical malpractice" and "if the patient instead receives 'nonmedical, administrative, ministerial, or routine care,' . . . the action instead sounds in ordinary negligence. . . . Thus, medical providers are still subject to claims sounding in ordinary negligence.").  Therefore, we are merely answering the narrow question certified by the federal court.  We leave the determination of

(2005).  A determination of the nature of Plaintiffs' claims (and the applicability of the medical malpractice statute of repose) is not before us, only the narrow question certified by the federal district court.

## II.

As defined in section 38-79-410, "'[l]icensed health care providers' means physicians and surgeons; directors, officers, and trustees of hospitals; nurses; oral surgeons; dentists; pharmacists; chiropractors; optometrists; podiatrists; *hospitals*; nursing homes; *or any similar category of licensed health care providers*." (emphasis added).  "Our primary function in interpreting a statute is to ascertain and give effect to the intention of the Legislature." *Swanigan v. Am. Nat. Red Cross*, 313 S.C. 416, 419, 438 S.E.2d 251, 252 (1993) (citing *Wright v. Colleton Cty. Sch. Dist.*, 301 S.C. 282, 391 S.E.2d 564 (1990)).  "When the Legislature uses words of particular and specific meaning followed by general words, the general words are construed to embrace only persons or things of the same general kind or class as those enumerated." *Id.* (citing *State v. Patterson*, 261 S.C. 362, 200 S.E.2d 68 (1973)).

Under this canon of statutory construction, a genetic testing laboratory that performs testing at the request of a patient's treating physician for the purpose of assisting the treating physician in detecting an existing disease or disorder falls within the definition of "licensed health care providers."  Under these circumstances, the genetic testing laboratory is performing diagnostic testing at the request of a treating physician for the purpose of diagnosis and treatment, which is a core function of hospitals in diagnosing and treating patients.  *See, e.g.*, S.C. Code Ann. § 15-79-110(4) (Supp. 2017) ("'Hospital' means a licensed facility with an organized medical staff to maintain and operate organized facilities and services to accommodate two or more nonrelated persons for the diagnosis, treatment, and care of such persons . . . ."); *see also* S.C. Code Ann. § 38-71-1920(7), (11), (12) (2015) (providing the definition of a health care provider as "an institution providing health care services"—"for the diagnosis, prevention, treatment, cure, or relief of a health condition, illness, injury, or disease"—"including, but not limited to, hospitals *and . . . diagnostic, laboratory*, and imaging *centers*" (emphasis added)).  Under the circumstances presented, the genetic testing laboratory fits within the category provided by one of the specified designations in section 38-79-410, a hospital.  Thus, we conclude that a genetic testing laboratory in these

---

whether the statute of repose applies to this case in the capable hands of the United States District Judge.

circumstances clearly falls within section 38-79-410's catchall of "any similar category of licensed health care providers."

## III.

We answer the certified question in the affirmative—a genetic testing laboratory that performs genetic testing to detect an existing disease or disorder at the request of a patient's treating physician is acting as a "licensed health care provider" under S.C. Code Ann. § 38-79-410.

**CERTIFIED QUESTION ANSWERED.**

**BEATTY, C.J., FEW and JAMES, JJ., concur. HEARN, J., dissenting in a separate opinion.**

**JUSTICE HEARN:** Because I view the role played by Quest Diagnostics to be distinguishable from the health care providers enumerated in section 38-79-410, I respectfully dissent. The key commonality[3] among the health care providers listed in the statute is that all function to provide direct, face-to-face treatment to patients, who in their own right conscientiously select these providers and rely on their skill, expertise, and professional judgment. These are individuals and institutions who make conclusive decisions about a patient's course of treatment. Although hospitals may contain in-house diagnostic laboratories, I do not believe that fact standing alone is dispositive of whether Quest falls within a similar category of health care provider. It is the hospital at the institutional level, taken as the sum of its working parts, which is covered by the statute—not its individual components. While Quest may provide a medical service sometimes available at hospitals, the similarities end there. I do not believe the limited, specialized services offered by Quest are sufficient to render it similar to hospitals, which are holistic enterprises offering a multitude of medical services and treatment options. Therefore, I would answer the certified question, "No."

---

[3] Of course, the exception to this commonality are "directors, officers, and trustees of hospitals," but their role is sufficiently different from that of a third party diagnostic lab such that their inclusion does not render Quest a "similar category" of licensed health care provider. When one considers agency principles, it becomes clear why the General Assembly would include these individuals in the definition of a licensed health care provider in order to offer increased protections in light of the myriad litigation facing hospitals.