No. 24-27, *Elaine Neidig, individually and on behalf of all others similarly situated v. Valley Health System*

**FILED**

**June 10, 2025**

released at 3:00 p.m.

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ARMSTEAD, Justice, dissenting:

The West Virginia Medical Professional Liability Act, West Virginia Code §§ 55-7B-1 – 12 ("MPLA"), is, by design, a broad and encompassing measure designed to govern civil actions arising from the provision, or failure to provide, adequate health care services to our citizens. The majority's opinion in this case improperly limits the scope and coverage of the MPLA. Accordingly, I dissent from the majority's answer to the certified question from the United States Court of Appeals for the Fourth Circuit because I believe that, by following the majority's opinion, a plaintiff may avoid application of the MPLA by utilizing artful pleading, a result that has previously been soundly rejected by this Court. Ms. Neidig creatively couches her claims as unfair and deceptive acts and practices pursuant to the West Virginia Consumer Credit Protection Act (W. Va. Code §§ 46A-6-101 – 110), breach of contract, and unjust enrichment. What the majority opinion fails to recognize is that the petitioner's unfair and deceptive acts and practices, breach of contract, and unjust enrichment claims are all based upon a deviation from the standard of care for a mammogram. In other words, Ms. Nedig will, essentially, have to establish a medical negligence claim in order to prevail. The majority incorrectly centers its attention, not upon the nature of the petitioner's factual allegations, but upon her characterization of the type of damages she seeks. Additionally, the petitioner's breach of contract claim is an anchor claim that falls within the terms of the MPLA. As such, I firmly believe that the

1

United States District Court for the Northern District of West Virginia was correct in its decision that the petitioner's claims fall squarely within the scope of the MPLA. Because the MPLA applies to this case and the allegations in the petitioner's complaint fall outside the one-year statute of limitations governing the MPLA, the petitioner's complaint should be dismissed. Accordingly, I would answer the Fourth Circuit's original certified question in the affirmative.

As noted by both the majority and Justice Walker's concurrence, for the MPLA to apply, a cause of action must fall within the Act's definitions of "medical professional liability" and "health care." Under the Act, "medical professional liability" is defined broadly to mean:

> [A]ny *liability for damages resulting from the* death or *injury of a person for any* tort or *breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient.* It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

*Id.* § 55-7B-2(i) (emphasis added). The Legislature has defined the term "injury" to mean "injury or death to a patient arising or resulting from the rendering of or failure to render health care." *Id.* § 55-7B-2(h). Finally, "health care," is defined, in relevant part, as:

> Any act, service or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for,

2

to, or on behalf of a patient during the patient's medical care, treatment or confinement, including, but not limited to, staffing, medical transport, custodial care, or basic care, infection control, positioning, hydration, nutrition, and similar patient services.

*Id.* § 55-7B-2(e)(2). We have stated that a health care claim is the necessary anchor from which MPLA application flows:

> The "health care" claim is the "anchor;" it gets you in the door of MPLA application to allow for inclusion of claims that are "contemporaneous to or related to" that claim, but still must be in the overall context of rendering health care services. It is not a broad stroke application that because a claim is contemporaneous to or related to health care that it falls under the MPLA. To put a finer point on it, you must have the anchor claim (fitting the definition of "health care") and then make the showing that the ancillary claims are (1) contemporaneous with or related to that anchor claim; and (2) despite being ancillary, are still in the context of rendering health care.

*State ex rel. W. Va. Univ. Hosps., Inc. v. Scott*, 246 W. Va. 184, 194, 866 S.E.2d 350, 360 (2021).

## I. Ms. Neidig's Complaint

In her complaint, Ms. Neidig has alleged a breach of contract based on the failure of health care services rendered, namely mammography services, to comply with the applicable standard of care. The parties agree that mammography services are health care. The issue in dispute in this case is that Ms. Neidig claims that she seeks only "economic" damages for the inadequacy of the mammogram, and that, therefore, the

3

MPLA is inapplicable. However, the factual circumstances giving rise to her claims stem from her allegations that she did not receive adequate and appropriate health care when she received mammograms from Valley Health. While Ms. Neidig does not expressly characterize her claim as a claim for "Medical Professional Negligence," we have previously held that artful pleading will not defeat the application of the MPLA. *See* Syl. Pt. 4, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007):

> The failure to plead a claim as governed by the Medical Professional Liability Act, W. Va. Code § 55–7B–1, *et seq.*, does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of "health care" as defined by W. Va. Code § 55–7B–2(e) (2006) (Supp. 2007), the Act applies regardless of how the claims have been pled.

The Court has further stated that:

> As *Ethicon* makes clear, a plaintiff cannot avoid the MPLA by virtue of failing to expressly allege a malpractice claim. If a claim falls squarely under the MPLA, the manner in which a complaint is drafted will not prevent the invocation of the MPLA. *See, e.g.*, *Ethicon*, 221 W. Va. at 707, 656 S.E.2d at 458 (approving circuit court's analysis that plaintiffs' labeling "as 'products' claims does not change the fundamental [MPLA] basis of this tort action"); *Gray v. Mena*, 218 W. Va. 564, 570, 625 S.E.2d 326, 332 (2005) (permitting plaintiff who opted not to bring MPLA action opportunity to amend complaint and comply with MPLA requirements rather than upholding dismissal for non-compliance with MPLA filing requirements). As we stressed in *Ethicon*, "the determination of whether a cause of action falls within the MPLA is based upon the factual circumstances giving rise to the cause of action, *not the type of claim asserted.*" 221 W. Va. at 702–03, 656 S.E.2d at 453–54 (emphasis supplied).

4

*Minnich v. MedExpress Urgent Care, Inc.-W. Va.*, 238 W. Va. 533, 537, 796 S.E.2d 642, 646 (2017). "It goes without saying that [a plaintiff] cannot avoid the MPLA with creative pleading." *Scott*, 246 W. Va. at 193, 866 S.E.2d at 359.

Thus, this Court must look at the allegations in the petitioner's complaint to determine "what factual circumstances" give rise to her causes of action. Contrary to the majority's position, the petitioner's complaint clearly contains allegations that the mammography services she received were a "risk" to human health. Specifically, she contends that:

> 1. She went to Winchester Medical Center to obtain a mammogram.
>
> 2. Valley Health advertised it had "a dedicated Breast Cancer Center, which houses a comprehensive program for our patients" and because of its "enhanced detection methods and advanced cancer care treatment, Valley Health [has] committed to beating cancer."
>
> 3. Valley Health had the most advanced mammogram technology.
>
> 4. Valley Health represented that it was "an accredited mammography center under the Mammography Quality Standards Act" and was capable of "perform[ing] proper and correct mammography examinations."
>
> 5. The Food and Drug Administration found that Valley Health staff "was not accurately positioning or compressing women's breasts during mammograms."

6. The resulting Food and Drug Administration report found there to be "serious image quality deficiencies" that posed a "serious risk to human health."

7. Further, the Food and Drug Administration found that the mammograms were of "reduced quality" and required Valley Health to notify its patients that they had "failed to meet the clinical image quality standards" of their accreditation body.

8. That the mammograms were "different, deficient, inferior" and of a "lesser value" than what Valley Health had represented.

9. "The mammograms provided to Ms. Neidig were not 'quality health care.'"

10. Valley Health represented that "their facilities and procedures were of a character and grade approved of by the" Food and Drug Administration.

11. Valley Health misrepresented that their mammography services "satisf[ied] federal standards for accreditation" and "met federal standards for accreditation."

12. Valley Health was unjustly enriched by receiving money for something they did not provide.

13. Valley Health breached its contract by providing mammography services that were "different, deficient, inferior, and of lesser value" than what was bargained for.

14. Valley Health also breached its contract by providing mammograms that had "serious image quality deficiencies" and were a "serious risk to human health."

Further, the complaint seeks the following damages:

1. Actual damages;

6

2.	Statutory damages for violations of the [West Virginia Consumer Credit Protection Act], as authorized by W. Va. Code § 46A-6-106;

3.	[Ms. Neidig]'s cost of litigation, including attorney's fees, court costs, and fees, pursuant to W. Va. Code §§ 46A-5-106, 46A-5-104;

4.	Compensatory damages for the unjustly depreciated value of purchased mammograms;

5.	Disgorgement of wrongfully obtained and retained profits;

6.	Contract damages; and,

7.	Such other and further relief as this Court may deem just and proper.

The petitioner's allegations and prayer for relief, regardless of her "artful" pleading, present a textbook MPLA case. In the very recent past, this Court has found that a complaint that contained allegations arising "from the alleged mishandling of fetal remains following health care," fell within the MPLA. *State ex rel. Charleston Area Med. Ctr., Inc. v. Thompson*, 248 W. Va. 352, 358, 888 S.E.2d 852, 858 (2023). Additionally, this Court has determined that corporate negligence claims fall within the MPLA, when the underlying factual allegations "relate to acts performed by health care providers." *Scott*, 246 W. Va. at 193, 866 S.E.2d at 359. Those findings are because, "[b]y the plain language of the statute, the MPLA applies when the action arises from 'health care' rendered to 'a patient.'" *Thompson*, 248 W. Va. at 358, 888 S.E.2d at 858.

7

Based upon the factual allegations in her complaint and the damages she seeks in her prayer for relief, Ms. Neidig plainly alleges she did not receive adequate and appropriate health care when Valley Health allegedly did not provide the quality of mammogram services for which she contracted. To demonstrate this, Ms. Neidig points to the Food and Drug Administration standards under the Mammography Quality Standards Act, cited in her complaint. *See* 42 U.S.C. § 263b(b). This Act requires a "'facility' mean[ing] a hospital, outpatient department, clinic, or other facility . . . that conducts breast cancer screening or diagnosis through mammography services" to obtain a certificate to provide radiological equipment for imaging of the breast, interpretation of those images, and processing of film produced by the equipment. 42 U.S.C. §§ 263b(a)(3)(A) & 263b(b)(1). These quality standards under the Mammography Quality Standards Act are set forth in 21 C.F.R. § 900.12 and demonstrate the rigorous expectations for mammography facilities to be certified in the United States.

Under West Virginia law, to prove a medical negligence case, a plaintiff must establish "that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care[.]" W. Va. Code § 55-7B-3(a). Failure to meet the standard of care is defined as:

> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a

reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and

(2) Such failure was a proximate cause of the injury or death.

*Id.* Here, Ms. Neidig places the standard of care into contention when she alleges that Valley Health failed to provide mammography services that satisfied the Food and Drug Administration requirements under the Mammography Quality Standards Act. Plainly, the Mammography Quality Standards Act establishes the standard of care and is precisely what Ms. Neidig alleges was breached. Under any interpretation, Ms. Neidig's allegations of "the worst kind of health care" are squarely based upon a "breach of contract based on health care services rendered." W. Va. Code § 55-7B-2(i). Thus, Ms. Neidig's breach of contract claim is the anchor claim that "gets you in the door" and all of her other claims are ancillary claims to that anchor. It is abundantly clear that Ms. Neidig's complaint is an MPLA claim in sheep's clothing.

II.     *Ms. Neidig's Injury*

Because the Legislature defined the term "injury" within the MPLA to include the word "injury," and that word is unambiguous, this Court is tasked to apply its plain meaning. *See* Syl. Pt. 1, in part, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968) ("[A] statute that is clear and unambiguous will be applied and not construed."). Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the

9

language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."). *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995) ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed."). With this standard in mind, it is clear that the plain meaning of "injury" in West Virginia includes legal injuries:

> 2. Compensatory damages recoverable by an *injured* party incurred through the breach of a contractual obligation are those as may fairly and reasonably be considered as arising naturally – that is, according to the usual course of things – from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of its breach.
>
> 3. Compensatory damages recoverable by an *injured* party incurred through the breach of a contractual obligation must be proved with reasonable certainty.

Syl. Pts. 2 & 3, *Kentucky Fried Chicken of Morgantown, Inc. v. Sellaro*, 158 W. Va. 708, 214 S.E.2d 823 (1975) (damages sought for breach of paving contract) (emphasis added).

In fact, an injury-in-fact is a necessary predicate to any civil action:

> Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an '*injury-in-fact*'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the *injury* and the conduct forming the basis of the lawsuit. Third, it must be likely that the *injury* will be redressed through a favorable decision of the court.

Syl. Pt. 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002) (emphasis added). The fact that legal injuries are compensable is grounded in the long-established definitions of the word "injury" in Black's Law Dictionary: "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice. . . Any harm or damage." INJURY, Black's Law Dictionary (12th ed. 2024). Thus, contrary to the conclusion reached by the majority opinion, the plain language of the word "injury" includes both legal and medical injuries. As such, the MPLA applies not only to medical injuries but to injuries sustained through the causes of action pled by Ms. Neidig.

The majority's narrow reading of the term "injury" to include only bodily injury is inconsistent not only with the express language of the MPLA but also with what is clearly the broad and encompassing nature of the MPLA statutory scheme. Indeed, while the majority attempts to extensively parse the definition of medical professional liability, it essentially ignores the initial broad term of such definition that states its application to "*any liability* for *damages*" arising from an MPLA claim. W. Va. Code § 55-7B-2(i) (emphasis added). Had the Legislature intended to limit "injury" to bodily injury, it could certainly have used such express term, either in the initial passage of the MPLA or in later revisions of the act. Instead, it declined to limit application of the MPLA in its subsequent amendments which clearly expanded the MPLA's application. Therefore, the majority's painstaking efforts to justify its decision to limit "injury" to bodily injury fail to accurately

11

capture the Legislature's intent.  The petitioner's complaint clearly alleges "injury" directly resulting from the failure of Respondent to provide adequate health care services and, thus, falls within the broad and encompassing scope of the MPLA.

III.    *MPLA Statutory Construction*

Both the majority opinion and Justice Walker's concurrence conclude that the operative language in the definition of "medical professional liability" should be read in such a way that severely limits the phrase "breach of contract based on health care services rendered" within the core provisions of the MPLA.  Neither the plain language of the statutes nor the rules of grammar support such a construction.  Particularly, both of the opinions offered by those in the majority spend an enormous amount of time discussing the grammatical rules applicable to the preposition "from" in the prepositional phrase "damages resulting *from* the death or injury of a person for any tort or breach of contract based upon health care services rendered."  (Emphasis added).  Unlike the conclusion reached by the majority opinions, these rules plainly state that a preposition does not have to be restated to apply to compound objects.  Indeed, it is recommended that such duplicative drafting be omitted:

> When possible, omit a repeated preposition or object in favor of a compound construction, but don't if the omission would make the construction unparallel.
>
> (a) Compound object.  If a preposition might be repeated with a different object, the better style is to use the preposition

> once with a compound object – unless a miscue might otherwise occur.
>
> Ex.: Commercial speakers have extensive knowledge of the market and their products. (Rather than of the market and of their products.)
>
> Ex.: The creditor may use the note to pay its own debts, sell to another creditor, or post as security for its own obligations. (Rather than repeating to before each infinitive phrase).

Bryan Garner, The Redbook: A Manual on Legal Style § 11.45 (a) (4th Ed. 2018). Notably, Garner's second example includes the intervening prepositional phrases of "to another creditor" and "for its own obligations." Even with these intervening phrases, the original preposition "to" applies to all subsequent objects of the sentence. This structure is very similar to the portion of West Virginia Code § 55-7B-2(i), which applies the preposition "from" to both of the compound objects "the death or injury of a person for any tort" and "breach of contract based on health care services rendered."

In effect, what the majority has done is move the words "breach of contract based on health care services rendered" into the second sentence of West Virginia Code § 55-7B-2(i), relegating it to ancillary claim status. *See Scott*, 246 W. Va. at 194, 866 S.E.2d at 360 (Ancillary claims are those that "are either 'related to' or 'contemporaneous to' the medical injury being asserted."). Ancillary claims flow from the language in the second sentence that states that "medical professional liability" "also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services." W. Va. Code § 55-7B-2(i).

13

However, this court is duty-bound to give every word in a statute meaning. "[I]n the construction of a statute every word must be given some effect and the statute must be construed in accordance with the import of its language." *Wilson v. Hix*, 136 W. Va. 59, 68, 65 S.E.2d 717, 723 (1951). "[N]o part of a statute is to be treated as meaningless and we must give significance and effect to every section, clause, word or part of a statute as well as the statute as a whole." *Mitchell v. City of Wheeling*, 202 W. Va. 85, 88, 502 S.E.2d 182, 185 (1998). "It is the duty of the courts to give a statute the interpretation called for by its language when this can reasonably be done; and the general rule is that no intent may be imputed to the legislature other than that supported by the face of the statute itself." *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 144 – 45, 107 S.E.2d 353, 358 (1959). From its plain language, the Legislature intended both claims for "the death or injury of a person for any tort" and claims for "breach of contract based on health care services rendered" to be anchor claims. To say otherwise contorts the rules of statutory and grammatical construction and neglects to give meaning to every word in the statute, leaving "breach of contract" claims "based on health care services rendered" to drift in the wind.


IV.     *Conclusion*


14

The majority has misinterpreted and erroneously limited the MPLA by holding that Ms. Neidig's claims are outside of its clear and encompassing provisions. In doing so, the majority has ignored the factual allegations contained in Ms. Neidig's complaint and relegated claims arising from a "breach of contract for health care services rendered" to an ancillary claim under the MPLA.[1] Although this Court has stated that "[w]e are not a superlegislature, and we refuse to pretend to be one," *Beasley v. Sorsaia*, 247 W. Va. 409, 415, 880 S.E.2d 875, 881 (2022), the majority has, in effect, rewritten the language of the MPLA in a hyper-technical manner. The majority's conclusion flies in the face of the clear and encompassing intent of the act which is to address a broad range of claims related to provision, or failure to provide, health care. I therefore would answer "Yes" to the Fourth Circuit's original certified question asking "[w]hether plaintiff's claims can fall under the West Virginia Medical Professional Liability Act if the plaintiff disclaims any form of physical or emotional injury," and respectfully dissent from the majority's opinion.[2]

_____

[1] Footnote 9 of the majority opinion states, "[h]ere, our analysis does not reach that question because we conclude that in the absence of a death or personal injury, there is no *anchor* claim to which it may be tethered, and thus need not decide whether Petitioner's claim would fit the statutory definition of an ancillary claim."

[2] The majority reformulates the certified question to ask "[d]oes the Medical Professional Liability Act apply to a suit against a health care provider or health care facility when the plaintiff claims only economic damages and disclaims all liability based on physical injury, emotional injury or death?" While I think reformulation was unnecessary, and I believe the reformulated certified question mischaracterizes the

petitioner's prayer for relief in that such prayer includes a demand for "actual damages," "contract damages" and "[s]uch other and further relief as this Court may deem just and proper," I would, nonetheless, also answer the reformulated certified question as "Yes" for the reasons set forth in this separate opinion.